ROY B. PALMORE *v.* BALTIMORE & OHIO RAILROAD COMPANY ET AL.

[No. 39, April Term, 1928.]

*Decided June 21st, 1928.*

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James J. Lindsay,* for the appellant.

. *Allen S. Bowie* and *Duncan K. Brent,* for the Baltimore & Ohio Railroad Company, appellee.

*David G. McIntosh, Jr., James F. Thrift, Frank R. Hubachek,* and *F. B. Hubachek,* for Paul L. Bayer, appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellant, Roy B. Palmore, engaged in the business of purchasing from employees of corporations all, or a portion, of their earned salaries, on February 1st, 1928, bought of the appellee Paul L. Bayer, an employee of the Baltimore & Ohio Railroad Company, the other appellee, a portion of his wages earned in January, 1928, amounting to twenty-five dollars, and paid him therefor the sum of twenty-three dollars. On February 25th, thereafter, he entered into a similar transaction with the appellee Bayer for the same amount of money. The railroad company was notified of the second alleged sale or assignment, but refused to recognize it. In consequence of such refusal, the appellant filed his bill against the appellees Paul L. Bayer and the Baltimore & Ohio

Railroad Company, alleging the facts stated, together with other facts immaterial to the question before us, to which further reference need not be made, and asked, "(a) Discovery as to the said defendant and each of them and that they be required to discover the entire earnings of the said defendant, Paul L. Bayer, in his capacity as carman for the month of January, 1928. (b) That the said court may assume jurisdiction over said fund and determine the rights of the parties hereto. (c) That your orator may have a decree *in personam* against each of the said defendants for said sum of twenty-five dollars."

A demurrer filed to the bill was sustained on the ground that the transaction was in fact a loan and in conflict with, and in violation of section 16, article 58A of the Code, known as the "Petty Loan Act."

The previous sections of this article require persons, firms, or corporations engaged in the business of making loans of money, etc., of the value of three hundred dollars or less at a greater rate of interest than six per cent. per annum, to first obtain a license therefor from the bank commissioner, after having given approved bond for the amount and of the character therein named, and in them are also found other regulatory provisions, to which we need not more particularly refer.

Section 16, as first enacted by the Act of 1918, ch. 88, was as follows: "No licensee shall take any confession of judgment or any power of attorney, nor shall he take any note, promise to pay, or security that does not state the actual amount of the loan, the time for which it is made and the rate of interest charged, nor any instrument in which blanks are left to be filled after execution."

This section was subsequently amended by the Act of 1924, ch. 115, by adding thereto an additional paragraph, which is as follows: "The payment of three hundred dollars ($300.00) or less in money, credit, goods or things in action, as a consideration for any sale, assignment or order for the payment of wages, salary, commissions or other compensation for services, whether earned or to be earned, shall be deemed a

loan within the provisions of this article secured by such assignment and the amount by which such assigned compensation exceeds such payment shall be deemed interest upon such loan from the date of such payment to the date such compensation is payable. Such loan and such assignment shall be governed by and subject to the provisions of this article."

The sole question presented by this appeal is the validity *vel non* of section 16 of article 58A of the Code, as above stated.

The appellees, in support of their contention that the act is valid and not subject to objection under either the state or federal constitution, rely upon the decision of this court in *Wight v. Balto. & O. R. Co.*, 146 Md. 66, in which we held valid the Act of 1906, ch. 399, codified as sections 11 to 17, inclusive, of article 8 of the Code, titled "Assignment of Choses in Action." By the last named article, all assignments of wages or salary in any amounts are declared to be invalid unless certain requirements are followed, and, by section 14 of that article, sales, under the term "assignments," are included therein. It was contended by the appellant in *Wight v. Balto. & O. R. Co.*, *supra*, that the assignment in that case was valid because of the unconstitutionality of said Act of 1906, ch. 399. In support of that contention the appellant said: "So far as it deals with the claims for wages or salaries actually earned, it is clearly an unwarranted interference with the owner's liberty of contract and right of property and is void under the due process guaranty of our fundamental law." In that case, we said, speaking through Judge Offutt:

"This act is remedial in character, and its apparent purpose is to throw around transactions such as that involved in this case such safeguards as will protect the wage earner, who may be a party to them, from the greed and the rapacity of unscrupulous persons, who might exploit his necessities and misfortunes to his loss and their profit. That purpose is certainly within the police power of the state, and the only question open is whether in its attempt to effect that purpose the

8

Legislature has in this act violated any of the privileges secured to the citizen by the guaranties of the state or federal constitution. And in dealing with that question we cannot disregard the consideration that any act designed to accomplish such a purpose must be sufficiently definite and comprehensive, in its selection of the means and methods designed to effect it, to frustrate the energy and ingenuity of the class at whom it is aimed, who so often regard the privilege of exploiting the necessities of borrowers as a vested property right. And while there should be no paltering with any real assault upon the rights, privileges, and immunities guaranteed to the citizen by the constitution of this state or of the United States, on the other hand there can be no justification for resorting to strained, forced, technical, or tenuous reasoning in the construction of those charters, in order to strike down an act of the Legislature passed in the ostensible exercise of the police power of the state and in the public interest. * * *

"The act took from the appellants no property, unless the business of buying without regulation or restraint wages at a discount is property. And while, under the facts of this case, we know of no definition of 'property' which could include that privilege, yet if that privilege could be considered property, the appellants were not deprived of it without due process of law, whether we assume that the word 'property' relates to the particular assignment involved in this case or to the privilege of buying such assignments generally as a business, because there is nothing in the act which purports to affect rights acquired in transactions prior to its passage, and all transactions after its passage were carried on with knowledge and notice of its existence and subject to its terms. These principles are in accord with the general trend of judicial authority and may be regarded as established; for while the right to pursue any lawful occupation or calling is generally, if not universally, recognized as property within the 'due process' clause of the federal constitution, yet, on the other hand, the right of the state to regulate such a business, when its unregulated operation may injuriously affect the welfare of others is equally well settled."

And further on in the opinion Judge Offutt, in dealing with the objection that the regulations and statutes under consideration unreasonably restrain the freedom of contract guaranteed to the appellants by the "due process" clause of the federal constitution, said: "While it is true as a general rule that all competent persons are free to make any contracts they please which are not contrary to public policy or positive law, that rule is subject to the qualification that the state in the exercise of its police power and in the interest of the public welfare may regulate and limit that right," citing 12 C. J. 948; *Adair v. United States,* 208 U. S. 161; 6 *R. C. L.* 269; *Taylor on Due Process,* 493.

The inquiry is not whether the Legislature has the power to regulate a business, such as that in which the appellant was here engaged, for the protection of the public, for that power is well established, but it is whether the regulation is reasonable. By a comparison of the statute in *Wight v. Balto. & O. R. Co., supra,* which we held reasonable and valid, with the statute before us, we find no additional regulatory features in the latter, to render it unreasonable or invalid.

The requirements of the Act of 1918, ch. 88, considered in the light of our decision in *Wight v. Balto. & O. R. Co., supra,* cannot properly be said to be unreasonable, and we do not understand that the appellant so regards them. His complaint is directed to the succeeding paragraph of that section, which was added thereto by the Act of 1924, ch. 115, which provides that the "consideration (when not more than three hundred dollars) for any *sale,* assignment or order for the payment of wages, salary, commissions or other compensations for services, * * * shall be deemed a *loan* * * * secured by such assignment and the amount by which such assigned compensation exceeds such payment shall be deemed interest upon such loan * * * to be governed by and subject to the provisions of this article."

It was specially provided by the Act of 1906, ch. 399, that the term "assignment" therein used, included the sale of wages of any persons, or of any interest therein. The Act

of 1918, ch. 88, did not, it seems, include sales and had reference only to loans. It was because of such omission, no doubt, that said act was amended by the Act of 1924, ch. 115, which included within its provisions, sales, assignments, or orders for the payment of wages, etc. The act, as amended, including sales of wages within its provisions, cannot be distinguished from the Act of 1906, ch. 399, which also included sales within its provisions, and which we held in *Wight v. Balto. & O. R. Co.* not to be unreasonable, and consequently valid.

Our decision in the last named case fully answers the contention of the appellant in this case, and the decree appealed from will be affirmed.

*Decree affirmed, with costs.*