# Richmond

W.. L. Van Dyke v. Commonwealth of Virginia.

November 24, 1941.

Record No. 2431.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Son* and. *W. L. Devany, Jr.,* for the plaintiff in error.

. *Abram P. Staples, Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

The defendant in this case, now plaintiff in error, is appealing from a judgment of the Court of Hustings for the City of Portsmouth. That judgment confirms a jury's verdict and fixes his punishment at a fine of $500.00. He was charged with violating Chapter 166 C Uniform Small Loan Act of the Code of Virginia.

J. M. Floyd borrowed $10.00 from the Southern Credit Company and executed to it this contract:

"No. 7526E

## CONDITIONAL OBLIGATION

"$11.00                    Portsmouth, Va., Apr. 29, 1940.

"1. On 5/15/40, 19.., for value received, the undersigned maker promises to pay to Southern Credit Company, or its assignee, at its office in this city, the sum of $11.00 Dollars without interest until maturity, and thereafter interest at six per cent per annum until paid, provided, however, that if the undersigned maker shall, within the period from date hereof to date of maturity, involuntarily suffer BY ANY CAUSE either death, permanent and total physical disability, irrecoverable loss of the sight of an eye, loss of a hand (at or above the wrist) or a foot (at or above the ankle), continuous sickness for sixty days, involuntary loss of employment for sixty days for any cause, permanent transfer from this city to another city, or damage exceeding fifty per cent of total value thereof to household furniture now owned by undersigned maker while at home address given below, or destruction by fire to the principal place of business in which the undersigned is actively and regularly employed, whereby the undersigned is deprived of his or her regular employment for at least sixty consecutive days thereafter,—then the whole or any part of this obligation remaining unpaid at that time shall not be payable at any time, and this obligation and any security taken to secure its payment shall be unenforcible.

"2. The undersigned maker hereby irrevocably:

"(a) represents and warrants, for the purpose of obtaining money on this obligation, that his total indebtedness, exclusive of this obligation, does not exceed $........

"(b) agrees that if this obligation is not paid at maturity (and none of the events enumerated in paragraph 1 hereof shall have happened prior to date of maturity), to pay all costs and expenses incurred or expended in

efforts to collect this obligation, including a reasonable attorney's fee;

"(c) stipulates that this is an original transaction, and is not a renewal or extension of any other transaction prior to date hereof;

"(d) stipulates that the charges included in the amount repayable on this obligation are compensation for the risk assumed by the Company in connection with this transaction and that such charges shall not at any time be considered as 'interest' for the 'loan or forbearance of money', within the meaning of the Virginia statutes.

> "Undersigned Maker,
> "(Signed) J. M. FLOYD, (Seal)
> ................................
> "Home address with street and city."

Defendant contends that this is a contract of hazard and therefore not usurious; that these contingencies which may defeat recovery are real and not remote, and reminds us that "man that is born of woman is of few days, and full of trouble."

But, as was said in *City of Lynchburg* v. *Norvell,* 20 Gratt. (61 Va.) 601, we look to probabilities and not to possibilities.

This stipulation was entered into:

"It is hereby stipulated between the Commonwealth's Attorney of the City of Portsmouth, Lawrence W. I'Anson, Esquire, on behalf of the Commonwealth, and James G. Martin, Esquire, attorneys for the defendant, that the said W. L. Van Dyke, while acting as manager for C. E. Jarvis, Jr., trading as Southern Credit Company, and not licensed to do business under the Uniform Small Loan Law of this State, but licensed as a loan company under the ordinances of the City of Portsmouth, on April 29th, 1940, in the City of Portsmouth, in the State of Virginia, to-wit, at the office of the said Southern Credit Company, 216 New Kirn Building, took in an instrument in writing, called and known as a 'Con-

ditional 'Obligation', a copy of which is hereto attached signed by J. M. Floyd, marked as Exhibit 'A' and intended to be read as a part hereof, which will fall due, mature and become payable on May 15, 1940, for the sum of ($11.00) eleven & no/100 Dollars, of which ($10.00) ten & no/100 Dollars represents the return of the amount advanced to the said obligor, and ($1.00) one & no/100 Dollars, represents the fee charged under the said contract by the said defendant therefor, and that the defendant is in the business of handling such transactions.

"May 18, 1940.

JAS. G. MARTIN,
"Attorney for W. L. Van Duke.
L. W. I'ANSON,
"Attorney for Commonwealth."

The maximum charges which may be made by those duly licensed under the Uniform Small Loan Law of this State is fixed by statute, Code, section 4168(51):

"Every person, copartnership or corporation licensed hereunder may lend any sum of money not exceeding in amount the sum of three hundred dollars and may charge, contract for, and receive thereon interest at a rate not to exceed three and one-half per centum per month."

In the instant case the interest rate was 240 per cent.

For the defendant *Boulware* v. *Newton*, 18 Gratt. (59 Va.) 708, is cited and relied upon.

In that case Newton executed this bond:

"$5,000. On demand, three months after notice to pay, I promise to pay to William Boulware the sum of five thousand dollars, without interest, in current funds; but it is understood and agreed, that the money is to be punctually paid at the expiration of three months after demand, and if not so paid, is to carry interest from the day of demand; and the said Boulware shall not be re-

quired to receive the money except at his pleasure. Witness my hand and seal this 29th day of January, 1863.

"WILLOUGHBY NEWTON, (Seal)"

Demand was made on June 25, 1865.

In a preliminary observation the court said:

"Contracts are usually referable, for their construction, to the laws of the country where made. Parties must be taken to contract in reference to them; and hence, the *lex loci contractus* is a prevailing canon of interpretation. In order, however, to test the applicability of this doctrine to our present enquiry, we must look to the situation of the parties, as affected by the remarkable political events that were then transpiring, and which might be naturally expected to enter into their consideration, and influence in some degree their agreement."

And that:

"It was impossible not to foresee the probability of change in the currency; whether it should be by the substitution of another by the Confederate Government when established or by the return of Federal money through the restoration of Federal authority, was a consideration which might have fairly entered into the contracts of men."

And that:

"The assertion of the appellee's counsel, namely, that while entertaining absolute faith in the triumph of the Confederacy, he was doubtful of the ultimate redemption at par of the Confederate treasury note, described truly the prevalent opinion in this State."

In that case the court held that the contract was one of hazard, as it undoubtedly was.

Contracts of this character are scrutinized with care, and courts are alert to discover specious devices. The debtor often belongs to a class which needs protection, and his needs are sometimes so urgent as to ex-

tort from him any conditions which the creditor seeks to impose. Floyd would probably have agreed to pay $12.00 as readily as $11.00.

■ "The cupidity of lenders, and the willingness of borrowers to concede whatever may be demanded or to promise whatever may be exacted in order to obtain temporary relief from financial embarrassment, as would naturally be expected, have resulted in a great variety of devices to evade the usury laws; and to frustrate such evasions the courts have been compelled to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered. * * *" 27 R. C. L. 211.

To the same effect is *Watkins* v. *Taylor and Mewburn,* 2 Munf. (16 Va.) 424 and 3 Munf. (17 Va.) 595, 5 Am. Dec. 486.

This general rule applies with added force to loans like that under review.

It is true that the rule in *Boulware* v. *Newton, supra,* was reaffirmed in *Lynchburg* v. *Norvell, supra.* So far as we are advised, it has never been questioned. But it is interesting to note that city bonds sold to Norvell in 1864 for Confederate money at a heavy discount, payable thirty years after date, were held to be usurious, and that this was true although they were to be paid in currency current when they fell due which might be taken as a payment of taxes. This was held to be no hazard.

The Supreme Court of Arkansas had occasion to consider a case quite like this in judgment. *Doyle* v. *American Loan Co.,* 185 Ark. 233, 46 S. W. (2d) 803. There a debtor executed his bond for $110.00 of date January 1, 1931, due July 1, 1931, without interest but with interest at 10 per cent after maturity. In it were these stipulations:

"'* * * if the undersigned maker shall, within the period hereof from date hereof until date of maturity involuntarily suffer By Any Cause either death, permanent and total physical disability, irrecoverable loss of the sight of an eye, loss of a hand (at or above the wrist) or a foot (at or above the ankle) or damage exceeding fifty per cent. of total value thereof to household furniture now owned by undersigned maker while at home address given below, then the whole or any part of this obligation remaining unpaid at that time shall not be payable at any time, and this obligation and any security taken to secure its payment shall be unenforceable.''

After recognizing the general law which governs hazards, the court said:

"It is equally well settled, however, that a merely colorable contingency or hazard will not prevent excessive interest charges from being usurious.''

It held that this was merely an evasive device.

In *Missouri, Kansas & Texas Trust Co.* v. *McLachlan,* 59 Minn. 468, 61 N. W. 560, it appears that a $9,000 loan was to be evidenced by ten notes, each of $1,620, payable in monthly installments of $135.00. It was provided that should the maker die within ten years after the execution and delivery of these notes and the mortgage securing them, those remaining unpaid should be cancelled, provided that previous installments had been promptly paid and provided further that the maker should not commit suicide within two years, had not visited the torrid zone and should not do certain other designated things. The court said that an arithmetical calculation demonstrates that the notes taken, $16,200, far exceeded the $9,000 bond and concluded his opinion by saying that "these circumstances would justify a finding that the contingency in this case was merely a colorable device to cover usury.''

The character of this risk, whether shadowy or substantial, was submitted by the court on this instruction:

"The court instructs the jury that unless they believe from the evidence beyond every reasonable doubt that there was no substantial risk of the loss of the money by reason of any of the stipulations in the contract, it is the duty of the jury to find the defendant not guilty."

A verdict, of course, must rest upon evidence, but in the consideration of facts established the jury must apply common sense and weigh them as ordinary men are expected to weigh them. They were of opinion that these contingencies were but plausible devices to cover up the fantastic rate of interest charge. The trial judge was of the same opinion, and we believe that they were right. The judgment should be affirmed, and it is so ordered.

*Affirmed.*