VALLEY ACCEPTANCE CORPORATION, ET AL.

V.

CARLTON GLASBY, ET AL.

Record No. 821880

VALLEY ACCEPTANCE CORPORATION, ET AL.

V.

RUFUS W. HARPER, ET AL.

Record No. 821881

November 27, 1985

Present: All the Justices

*John H. Kennett, Jr.*, for appellants. (Record Nos. 821880 and 821881.)

Henry L. Woodward (Alan T. Gravitt, on brief), for appellees. (Record Nos. 821880 and 821881.)

THOMAS, J., delivered the opinion of the Court.

The predominant issue in these two appeals is whether a loan which, in principal amount, falls below the ceiling for small loans as set forth in the Small Loan Act (the Act),[1] is subject to the provisions of the Act even though the loan is labeled a mortgage loan. The trial court held that the Act applies in such a situation. We agree.

## I. Background

### A. The Harper Loan

In early 1976, Rufus W. Harper and Zelpha Lee Harper (the Harpers) sought to borrow a small amount of money for personal purposes. They were homeowners. They responded to an advertisement by Valley Acceptance Corporation (Valley) which stated that Valley made mortgage loans. Though they applied to Valley for a loan, the loan they ultimately received was not from Valley; it was from Virginia C. Wiesen, Valley's president.

The loan documents were prepared on April 7, 1976. The principal amount of the loan was $850.00. The Harpers received $667.63 of the loan proceeds. The amount in excess of $667.63 was used to pay delinquent property taxes. In order to secure the $850.00 loan, the Harpers obligated themselves to repay Wiesen a total of $2,056.25 over five years and to give Wiesen a deed of trust on their home. The total repayment amount agreed to by the Harpers included, in addition to the loan amount, a recording fee of $25; attorney's fees of $100; appraisal fees of $50; interest of $881.25; and a broker's fee of $150, paid to Valley. The annual percentage rate of the Harper loan was 31.75%.

At the time of the Harper loan, the small loan ceiling was $1,500 in principal amount. At that time, Wiesen was not licensed to make loans covered by the Act. She was in the lending business, but the loans she made were secured by real estate; and she

---

[1] At the time of the loans here under review, Code § 6.1-247 et seq. was known as the Small Loan Act. In 1981, the name of the Act was changed to the Consumer Finance Act.

had made ten loans in five years that were within the small loan limit, but which were nonetheless secured by deeds of trust.

The Harpers sued, claiming that the loan violated the Act. The trial court ruled in favor of the Harpers and granted them summary judgment against Wiesen. In so ruling, the trial court stated the following reasons:

1. that Wiesen was engaged in the business of lending in amounts below the then established size of loan ceiling or less within the meaning of the Small Loan Act,
2. that the principal amount of the Harper Loan was below the then current ceiling for small loans,
3. that Wiesen violated the Act in three respects:
 a. she was not licensed to make small loans
 b. she imposed charges and fees prohibited by the Act; and
 c. she took a security interest in real estate in violation of the Act, and
4. that the attempt to avoid the applicability of the Act by use of a first deed of trust on real estate constituted a device, subterfuge, or pretense to evade the Act as described in Code § 6.1-251.

The trial court declared the loan void, entered summary judgment against Wiesen, and continued the case for trial on the Harpers' claim for punitive damages and attorneys fees. After a hearing on those issues, the trial court awarded the Harpers punitive damages of $450.00, with interest, against Valley. Valley and Wiesen appeal.

## B. *The Glasby Loan*

In late 1979, Carlton Glasby and Gloria Glasby (the Glasbys) sought to borrow $500 to pay utility bills. They were homeowners. They responded to an advertisement by Valley which stated that Valley made mortgage loans. Though they applied to Valley for a loan, the loan they actually received was not from Valley; it was from Wiesen, still Valley's president.

The loan documents were prepared on October 31, 1979. The principal amount of the Glasby loan was $550, which the Glasbys received. In order to secure the $550 loan, the Glasbys obligated

themselves to repay Wiesen a total of $2,416.80 over four years and to give Wiesen a deed of trust on their home. The total repayment amount agreed to by the Glasbys included, in addition to the loan amount, a charge for credit life and credit accident insurance of $237.57; recording fees of $100; attorney's fees of $300; appraisal fees of $200; interest of $789.30; "points" of $93.81; mortgage guaranty insurance premiums of $31.73; a "service charge" of $31.88; and a broker's fee of $82.50 paid to Valley. The annual percentage rate of the Glasby loan was 30.48%.

At the time of the Glasby loan, the small loan ceiling was $2,300 in principal amount. At that time, Wiesen was not licensed to make loans covered by the Act. She was in the lending business, but the loans she made were secured by real estate; and she had made ten loans in five years that were within the small loan amount, but which were nonetheless secured by deeds of trust.

The Glasbys sued, claiming that the loan violated the Act. The trial court ruled in the Glasbys' favor and granted them summary judgment against Wiesen. The bases for the court's ruling in *Glasby* were essentially the same as in *Harper*. The trial court declared the Glasby loan void, entered summary judgment against Wiesen, and continued the case for trial on the Glasbys' claims for punitive damages and attorney's fees.[2] After a hearing, which was consolidated with the Harper hearing, the trial court awarded the Glasbys punitive damages of $247.50, with interest, against Valley. In addition, the court awarded the Glasbys attorney's fees of $250.00 with interest, again against Valley.

## II. *Discussion*

Though the small loan ceiling changed between the time of the Harper loan and the Glasby loan, the Act remained essentially the same. Several provisions of the Act are central to this inquiry. We quote from the Act as it existed at the time of the Harper loan.

The statute describes in general terms who must comply with its requirements:

---

[2] One of the collateral issues in this appeal is whether Wiesen appealed in a timely fashion from the summary judgment entered against her on March 12, 1982. She waited until the court ruled on punitive damages and attorney's fees in a July 19, 1982 order before appealing. This was proper. The March order makes clear on its face that the case was not entirely resolved as to Wiesen though a main portion of the case had been decided. An appeal from the March order would have been premature.

*No person shall engage in the business of lending in amounts of the then established size of loan ceiling or less,* and charge, contract for, or receive, directly or indirectly, on or in connection with any loan, any interest, charges, compensation, consideration or expense which in the aggregate are greater than the rate otherwise permitted by law except as provided in and authorized by this chapter and without first having obtained a license from the Commission.

Code § 6.1-249 (emphasis added).

Next, the statute carefully describes those who are exempted from its operation:

No person doing business under the authority of any law of this State or of the United States relating to banks, savings banks, trust companies, building and loan associations, industrial loan associations, or credit unions shall be eligible to become a licensee under this chapter nor shall this chapter apply to any business transacted by any person under the authority of and as permitted by any such law, nor to any bona fide pawnbroking business transacted under pawnbroker's license, nor to anyone operating in accordance with the specific provisions of any other law heretofore or hereafter enacted.

Code § 6.1-250.

The statute then makes clear that attempts to evade its reach will not be permitted:

*The provisions of § 6.1-249 shall apply to any person who seeks to evade its application* by any device, subterfuge, or pretense whatsoever. . . .

Code § 6.1-251 (emphasis added).

The statute next prohibits "additional charges":

In addition to the charges herein provided for *no further or other amount whatsoever* for any examination service, brokerage, commission, fine, notarial fee, recordation fee or other thing or otherwise *shall be directly or indirectly charged*, contracted for or received. . . .

Code § 6.1-278 (emphasis added).

Finally, with regard to provisions pertinent to these appeals, the statute forbids liens on realty:

*No licensee shall take a lien upon real estate as security for any loan made under the provisions of this chapter*, except a lien arising upon rendition of a judgment; and any such lien taken in violation of the provisions of this section shall be void.

Code § 6.1-281 (emphasis added).

The Harpers and the Glasbys argue that the statutory provisions, taken together, lead inescapably to the conclusion that where the principal amount of a loan falls below the ceiling contained in the Act, then even if the lender is not licensed under the Act, and even if the loan is described as a mortgage loan, that loan is nevertheless subject to the Act. We agree.

The Act is remedial in nature. *See Sweat* v. *Commonwealth*, 152 Va. 1041, 1057, 148 S.E. 774, 778 (1929). Consequently, it must be liberally construed to avoid the mischief at which it is directed and to advance the remedy for which it was promulgated. *See Bowman* v. *Commonwealth*, 201 Va. 656, 661, 112 S.E.2d 887, 891 (1960). In *Sweat*, we outlined the history of the Act:

For some time prior to 1918, the money loan sharks and salary-buyers were doing business in Virginia and elsewhere, and often imposed upon the ignorant and the needy by making small loans to them upon unfair and unjust terms. In 1918, Virginia enacted her first uniform small loan law (Acts 1918, chapter 402) to regulate the manner of conducting this business.

152 Va. at 1046, 148 S.E. at 775. The issue in *Sweat* was the constitutionality of the provision limiting the amount of interest that could be charged by a small loan lender. In upholding the constitutionality of the Act, we quoted with approval from the Maryland case of *Palmore* v. *B & O Ry. Co.*, 156 Md. 4, 142 A. 495 (1928), as follows:

"This act is remedial in character and its apparent purpose is to throw around transactions such as that involved in this

case such safeguards as will protect the wage earner who may be a party to them from the greed and the rapacity of unscrupulous persons who might exploit his necessities and misfortunes to his loss and their profit."

152 Va. at 1057, 148 S.E. at 778 (quoting *Palmore*, 156 Md. at 7, 142 A. at 496).

In *Van Dyke v. Commonwealth*, 178 Va. 418, 17 S.E.2d 366 (1941), we reemphasized our concern for victims of overreaching lenders. There, the defendant had been convicted of violating the Act by charging excessive interest. He claimed that the contract was one of hazard and therefore not covered by the Act. We rejected that argument and wrote as follows:

> *Contracts of this character are scrutinized with care, and courts are alert to discover specious devices.* The debtor often belongs to a class which needs protection, and his needs are sometimes so urgent as to extort from him any conditions which the creditor seeks to impose. Floyd would probably have agreed to pay $12.00 as readily as $11.00.
>
> "The cupidity of lenders, and the willingness of borrowers to concede whatever may be demanded or to promise whatever may be exacted in order to obtain temporary relief from financial embarrassment, as would naturally be expected, have resulted in a great variety of devices to evade the usury laws; and *to frustrate such evasions the courts have been compelled to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered.*"

*Id.* at 423-24, 17 S.E.2d at 369 (quoting 27 R.C.L. *Usury*, 211 (1920)) (emphasis added).

The need to scrutinize with care loans made to borrowers caught in financial distress continues to be a valid concern. Moreover, it remains necessary today, as in 1941, for courts to look beyond the mere form of a transaction and analyze its substance. The reason for such scrutiny is nowhere more apparent than in these two appeals. For here, property owners in need of relatively small sums of money ended up encumbering their homes — a result the Act seeks to prevent. The Harpers received an $850.00 loan at an interest rate of 31.75% and agreed to repay approxi-

mately two and one half times the loan amount when they could have secured the same loan from a regulated small loan lender at a maximum cost of approximately $522. The Glasbys received a $550 loan at an interest rate of 30.48% and agreed to repay approximately four and one half times the loan amount when they could have secured the same loan from a regulated small loan lender at a maximum cost of approximately $374.[3]

█ In our opinion, when the statutory provisions are considered as a whole, it readily appears that the loans here in issue are covered by the Act. First, the Act contains specific exemptions. Wiesen does not claim any exemption nor does any appear to apply. This circumstance is of critical importance, for where a remedial statute provides exemptions, those not exempted must presumably be included.

█ Next, not only is Wiesen not exempted from the Act, she is caught by the Act's broad anti-evasion provision. The essence of her defense is that the loans here under review were not small loans, but were mortgage loans. Certainly, the loans were in the form of mortgage loans but the Act prohibits liens upon real estate as security for any loan made under the provisions of the chapter. In addition, even if a lender is not a licensee, the Act applies if the lender attempts to evade the Act.

Wiesen contends that since the loans she made were mortgage loans, the Act simply does not apply. Wiesen's position leads to a conundrum: The Act prohibits loans below a certain principal amount with an aggregate interest rate above that permitted by law made by a lender without a license; the Act does not exempt Wiesen; Wiesen does not have a license; the Act applies to those who seek to avoid it; the Act forbids liens on realty; yet, the Act can be avoided by placing a lien on realty. The borrowers argue that since the loan was below the small loan ceiling it violated the Act *because* it involved a lien on realty. The lender argues that no matter the amount of the loan it *does not* violate the act *because* it involved a lien on realty. In short, the same premise is used to argue mutually contradictory conclusions.

---

[3] During oral argument counsel for the Glasbys represented that had the Glasby loan been made under the Act it would have cost $374. This representation was not challenged by other counsel. Moreover, the $374 figure can be arrived at using the regulations on costs in effect at the time of the Glasby loan. *See* S.C.C. Ann. Rep. 475-76 (1979). The cost of the Harper loan was calculated using the applicable regulations in effect at the time of that loan. *See* S.C.C. Ann. Rep. 307-08 (1974).

Further, in support of her argument that mortgage loans are not covered by the Act, Wiesen argues, without citation to evidence or authority, that the Act is simply not designed to protect people who own homes because those people have financial "clout" in that they can obtain mortgage loans where other borrowers cannot. Yet, this argument fails to address the point that the Act specifically prohibits liens on realty, a provision which would not be necessary if the Act were not meant to protect homeowners. Moreover, Wiesen's counsel conceded in oral argument that the Glasby and Harper loans make no economic sense. The fact that a homeowner would make a loan which makes no economic sense cuts against Wiesen's argument that homeowners are not intended to be protected by the Act because this concession suggests that even homeowners can find themselves in such economic distress that they will, for small sums, place the homestead in jeopardy. The Act is designed to prevent just such an occurrence.

We reject Wiesen's argument that by making a small loan in the form of a mortgage loan a lender can avoid the application of the Act. Were we to adopt Wiesen's position, we would gut the Act because we would thereby allow a lender to escape the Act by doing exactly what it forbids. This would be an absurd result which would render the Act virtually meaningless.

Wiesen also makes an historical argument to suggest that loans that fall below the small loan ceiling are not necessarily small loans. She states that until mortgage rates were deregulated in 1970, the rate that could be charged for small loans was higher than that which could be charged for mortgage loans. Thus, she contends, for most of the history of the Act, a borrower of a small amount would have been happy to secure it by a mortgage because that borrower could have secured a lower interest rate. In light of this historical situation, Wiesen reasons that since a mortgage loan of a small amount would have been beneficial to a borrower until mortgage rates were deregulated, then the legislature did not intend for all loans within the small loan ceiling to be treated as small loans.

This argument must also be rejected. Even when mortgage rates were lower than small loan rates, the Act prohibited liens on realty. This prohibition evidences a special legislative concern that a borrower of a small sum of money should not be allowed to put his one substantial asset — his home — at risk.

■ In addition, the Small Loan Act does not simply control interest rates; it also prohibits the imposition of other costs. In the Glasby loan, for example, other costs played a substantial part in increasing the total charges to the Glasbys. Most, if not all, of the other charges would have been eliminated under the Act. More specifically, in the Glasby loan, though the loan amount was $550.00, that was not the amount financed. $837.57 in other charges were added to the $550.00 *before* the interest was calculated. Then, $239.93 in prepaid finance charges were added on. The prohibition on "additional charges" — charges which are routinely assessed when mortgage loans are made — is further indication that the legislature intended loans below the small loan ceiling to be treated as small loans.

■ Making mortgage loans to the Harpers and the Glasbys was, in our opinion, simply a device designed to transform a small loan into something other than a small loan. At the same time, it caused the borrowers to pay more for their loans than the Act would have allowed. This conduct is sufficient to establish an evasion as defined in Code § 6.1-251. We hold therefore, in light of the policy concerns announced in *Sweat* and *Van Dyke*, and the language of the pertinent statutory provisions, that where, as here, a loan falls below the small loan ceiling and is made by a person in the business of making loans below that ceiling, then even though the loan is in the form of a mortgage loan, it will be treated as a small loan and thus will be subject to the Act.

■ In both appeals, Valley complains of punitive damage awards entered against it. Valley submits that these awards were improper because no compensatory damages were awarded against it. We agree. Here, neither compensatory damages nor nominal damages were awarded against Valley. Consequently, punitive damages could not be awarded. *See Zedd* v. *Jenkins*, 194 Va. 704, 74 S.E.2d 791 (1953). Therefore, we will reverse the portions of the judgments which awarded punitive damages against Valley.

■ In its appeal from the judgment in the Glasby case, Valley further contends that there was no basis for the award of attorney's fees against it under the Virginia Consumer Protection Act of 1977, Code § 59.1-199(C). The trial court awarded $250.00 in attorney's fees, under Code § 59.1-204,[4] for violation of Code §§

---

[4] Code § 59.1-204 provides as follows:

59.1-200 (F) and (N). Valley says the Virginia Consumer Protection Act does not apply in this case because the loan is regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* and because Valley did nothing wrong. However, taking the last point first, Valley's counsel essentially conceded in oral argument that for Valley to charge a broker's fee for placing a loan with its president was, at the least, a "technical" wrong. Thus, there was wrongdoing on Valley's part.

■ Next, the exclusion provision relied on by Valley reads in pertinent part as follows:

Nothing in this chapter shall apply to:
. . .
Those aspects of a consumer transaction which are regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.

Code § 59.1-199(C). By its terms, this exclusion applies only to "aspects" of a transaction regulated by the federal authorities. However, as the Glasbys point out, the federal act does not address all aspects of the Glasby loan. By its terms, the purpose of the federal act is "to assure a meaningful disclosure of credit terms. . . ." 15 U.S.C. § 1601(a) (1982). The federal act has nothing to do with the type of wrongful conduct engaged in by Valley. We hold, therefore, that the award of attorney's fees was proper.

## III. *Conclusion*

For all the foregoing reasons, the judgments appealed from will be affirmed in part and reversed in part.

Record No. 821880 - *Affirmed in part,*
*Reversed in part.*

A. Any person who suffers loss as the result of a violation of § 59.1-200 shall be entitled to initiate an action to recover actual damages, or $100, whichever is greater.

B. Notwithstanding any other provision of law to the contrary, in addition to any damages awarded, such person also may be awarded reasonable attorney's fees and court costs.

Valley does not argue that an award of damages is a prerequisite to the award of attorney's fees pursuant to subsection 204(B). Consequently, we do not decide this issue.

COCHRAN, J., dissenting.

I share the majority's sympathy for the borrowers in the present case who undoubtedly made bad bargains for themselves. In order to provide relief to these borrowers, however, the majority takes the position that one who makes a mortgage loan in an amount less than the maximum permitted under the Small Loan Act (now the Consumer Finance Act) is subject to the provisions of the Act.

Under the Act, mortgage loans are not permitted. Therefore, according to the majority, appellant Wiesen, who was never licensed under the Act, attempted to evade compliance in violation of Code § 6.1-251 and became subject to the Act under Code § 6.1-249. Moreover, the majority holds that appellant Valley Acceptance Corporation, which arranged the loans as broker, is liable for the appellees' attorney's fees in the Glasby case under the provisions of Code § 59.1-204, part of the Virginia Consumer Protection Act of 1977. I disagree with both conclusions.

In my view, the Small Loan Act is not applicable to these loan transactions. Both the Harpers and the Glasbys answered an advertisement of Valley Acceptance Corporation offering mortgage loans. Both couples knew the loans were mortgage loans. Each couple was given a rescission form giving them the right, under federal law, to cancel the transaction within three business days. Each transaction was consummated as a mortgage loan with all the costs incident to that method of financing. That the costs were exorbitant in view of the small amount of each loan is undeniable. But there is no statutory prohibition against making mortgage loans in amounts below the maximum permitted by the Small Loan Act. Indeed, there may occasionally be necessity or at least justification for such a small mortgage loan. A borrower with limited income available for repayment of principal may resort to a mortgage loan payable upon future disposition of the property.

The General Assembly has continued to enact laws to protect the poor and the ignorant from those who would otherwise prey upon them. Although no statute can be devised to redress every unwise or foolish business decision, whether made by the poor and ignorant or by the rich and learned, the General Assembly provides the appropriate forum to consider whether it is advisable in

the public interest to ban or restrict small mortgage loans. Absent legislative action, I would hold that the loans in these cases were valid mortgage loans and that appellant Wiesen was not subject to the provisions of the Small Loan Act.

Nor was the award of attorney's fees against Valley proper. The Virginia Consumer Protection Act authorizes an award of reasonable fees "in addition to any damages awarded." Code § 59.1-204. No actual damages having been assessed against Valley for a violation of that act, the Glasbys may not recover attorney's fees.

STEPHENSON, J., joins in dissent.