**A.F. McCAULLEY, et al., Plaintiffs,**

v.

**PURDUE PHARMA, L.P.,
et al., Defendants.**

**No. 2:01CV00080.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 15, 2001.

---

**804**

Neil L. Henrichsen, Henrichsen Siegel, P.L.L.C., Washington, DC, Emmitt F. Yeary, Yeary & Associates, P.C., Abingdon, VA, and S. Strother Smith, III, Abingdon, VA, for Plaintiffs.

Wm. W. Eskridge and Wade W. Massie, Penn, Stuart & Eskridge, Abingdon, VA, for Defendants Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company.

Steven R. Minor, Elliott Lawson & Pomrenke, Bristol, VA, for Defendants Abbott Laboratories and Abbott Laboratories, Inc.

Richard Norton, Edgefield, SC, Pro se.

## OPINION AND ORDER

JONES, District Judge.

The plaintiffs seek to add a new party defendant to this case, which if permitted would destroy diversity jurisdiction and require a remand to state court. Under the circumstances, I will exercise my discretion to deny the motion to add the nondiverse party and thus I will not remand the case.

### I

In this action, removed from state court, the plaintiffs complain that they have been the victims of the "promotion and marketing" of the prescription drug OxyContin® Tablets ("OxyContin").[1] The five plaintiffs assert eleven separate civil counts against six defendants.[2]

Of the six defendants, five are pharmaceutical companies that manufacture, sell, and promote OxyContin: Purdue Pharma L.P., Purdue Pharma, Inc., The Purdue Frederick Company (collectively "Purdue"), Abbott Laboratories, and Abbott Laboratories, Inc. (collectively "Abbott"). The remaining defendant is Dr. Richard Norton, who was the prescribing physician for one of the plaintiffs, A.F. McCauley.[3]

---

1. OxyContin is a controlled-release opioid (oxycodone) analgesic, approved by the Federal Drug Administration in 1995. *See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F.Supp.2d 362, 367 (S.D.N.Y. 2000), *aff'd and remanded*, 237 F.3d 1359 (Fed.Cir.2001).

2. The plaintiffs also seek to sue as representatives of certain class members. (Bill of Compl. § V.) However, in diversity jurisdiction cases, it is the citizenship of the named plaintiffs, rather than the class members, that controls. *See Supreme Tribe of Ben–Hur v. Cauble*, 255 U.S. 356, 365–366, 41 S.Ct. 338, 65 L.Ed. 673 (1921), *overruled on other grounds, Toucey v. N.Y. Life Ins. Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941).

3. The suit papers spell the name as "McCaulley" but in an affidavit filed by this plaintiff, he spells his name as "McCauley." This latter spelling will thus be used in this opinion.

Norton is not alleged to have treated any of the other plaintiffs.[4]

The suit papers assert claims against Purdue and Abbott for alleged violation of the Virginia Consumer Protection Act (Count I), products liability for failure to warn (Count III), products liability for manufacturing defect (Count IV), breach of warranty (Count IX), and false advertising (Count XI).[5]

The suit papers assert six other claims against all of the defendants, although three of these claims appear to have no application to Norton. Contrary to the allegations of Count VII (Continuing Public Nuisance), Norton does not likely "continue to perpetuate and maintain a public nuisance by ... massive production, promotion and marketing of OxyContin for use by citizens ... of Virginia ... and other states and countries." Norton is a federal prisoner and presumably is in no position to promote or market OxyContin.[6] Count X (Unjust Enrichment) asserts that the defendants have been unduly enriched by the plaintiffs' purchase of OxyContin. As far as is alleged, Norton is not a seller of OxyContin but only prescribed OxyCon-

tin to McCauley. Count VI (Medical Monitoring: Injunctive and Equitable Relief) asks the court to establish a medical monitoring program based upon the defendants' manufacturing, marketing, and selling OxyContin. Norton did not manufacture or sell OxyContin.

The remaining three claims against all of the defendants are for alleged negligence (Count II), negligence per se (Count V), and conspiracy (Count VIII).[7]

The plaintiffs demand judgment in the amount of 5.275 billion dollars for compensatory damages and request injunctive relief establishing a court-supervised "medical monitoring program," a "public awareness campaign," and a "state of the art substance abuse facility." (Bill of Compl. § VII, ¶¶ 8, 11–14.)

The suit was filed in the Circuit Court for Lee County, Virginia, on June 15, 2001. On July 10, 2001, Purdue and Abbott filed a notice of removal asserting diversity of citizenship and the existence of a federal question.[8] Norton and Brohi thereafter filed their consents to removal. The defendants allege that the plaintiffs are all Virginia residents and none of the defen-

4. There was initially a seventh defendant, Dr. Shirheen Brohi, who allegedly treated one of the plaintiffs, Cathy Helton. However, Dr. Brohi was voluntarily dismissed by the plaintiffs immediately prior to oral argument on the present motions.

5. While the suit papers may be read as alleging a claim for false advertising against all of the defendants, the plaintiffs assert that they do not intend to proceed against Norton on that count. (Pls.' Opp'n to Defs.' Mot. to Sever Def. Norton at 6.)

6. Norton was convicted by a jury in this court of offenses relating to a kickback scheme with a hospital administrator. See United States v. Norton, No. 00–4879, 2001 WL 939052 (4th Cir. Aug. 20, 2001).

7. In addition to adding a nondiverse defendant, the proposed amended complaint adds a claim against Norton for violation of the Vir-

ginia Consumer Protection Act (Count II). The amended complaint abandons the claims against Norton for negligence, negligence per se, medical monitoring, and continuing public nuisance. It also removes one the initial plaintiffs, Carol Wagoner, and adds two additional Purdue defendants, Purdue Pharma Company and The P.F. Laboratories, Inc. My refusal to add a nondiverse defendant is without prejudice to the submission of another amended complaint that does not seek to add Physician Access, Inc.

8. Since I deny the motion to amend, complete diversity exists between the parties and the court has subject matter jurisdiction over the case, regardless of whether there is a federal question involved. Therefore, I will not address the federal question issue in this opinion, although the parties have argued it.

dants is a Virginia resident, thereby creating complete diversity. *See* 28 U.S.C.A. § 1332(a)(1) (West 1993 & Supp.2001). The corporate defendants are incorporated out-of-state and also maintain their principal places of business outside Virginia. An affidavit filed by Cynthia K. Norton, wife of Dr. Norton, stated that he is a resident and citizen of Tennessee. Dr. Brohi also filed an affidavit alleging that she is a citizen of Pakistan and is not a resident of the United States.

Abbott filed an answer on July 13, 2001. Later that same day, the plaintiffs attempted to file an amended complaint adding a Virginia corporation, Physician Access, Inc. ("PAI"), as a defendant. The clerk declined to file the amended complaint without an order of the court because a responsive pleading had already been filed in the case. *See* Fed.R.Civ.P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served .... Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party."). The plaintiffs now seek leave to file this amended complaint. In it, they claim that PAI distributed, prescribed, and recommended OxyContin "by and through" Norton. (Proposed Am. Compl. ¶ 14.) Since PAI is incorporated in Virginia, its addition as a defendant would destroy complete diversity, depriving this court of its diversity subject matter jurisdiction. The plaintiffs have also filed a motion to remand, conditioned upon PAI being added as a defendant.[9] They agree that the action as unamended was properly removed to this court.

The Purdue defendants have also moved to sever the claims against Norton.

The motions have been briefed and argued, and are ripe for decision.

## II

■ A district judge has broad discretion when considering a motion to amend after the case has been removed to federal court. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C.A. § 1447(e) (West 1994); *see Mayes v. Rapoport*, 198 F.3d 457, 461–62 (4th Cir.1999). The Fourth Circuit's analysis of § 1447(e) holds that the court should consider all relevant factors, including " 'the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.' " *Mayes*, 198 F.3d at 462 (omitting citations). It is important for the court to carefully examine a plaintiff's attempt to join a nondiverse defendant after removal, especially where the plaintiff seeks amendment before any discovery is taken. *See id.* at 463. The timing raises a red flag that the plaintiff may be forum shopping. *See id.* Other factors to consider include the danger of parallel suits in state and federal courts, resulting in inconsistent results and judicial inefficiency, and the defendant's interest in a federal forum. *See Coley v. Dragon Ltd.*, 138 F.R.D. 460, 465 (E.D.Va.1990).

**9.** The initial plaintiffs are A.F. McCauley, Robert Bright, Theresa Bright, Cathy Helton, and Carol Wagoner, on behalf of her grandchildren, Khala and Kara Hamon. Inexplicably, the motion to remand was filed by A.F. McCauley, Robert Bright, Carol Connolly, Joseph Deckard, and Wayne Jewell. At oral argument, plaintiffs' counsel stated that this was a mistake.

■ The plaintiffs contend that the defendants bear the heavy burden of proving fraudulent joinder. Fraudulent joinder is a judicially-created doctrine that provides an exception to the requirement of complete diversity. It allows the federal court to ignore nondiverse parties in the state court action at the time of removal. *See Mayes,* 198 F.3d at 461. To show fraudulent joinder, the removing party must demonstrate: (1) outright fraud in the plaintiff's pleading of jurisdictional facts, or (2) that there is no possibility that the plaintiff can prove a cause of action against the nondiverse defendant. *See Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999).

Despite the plaintiffs' argument that the doctrine is applicable in this case, it is clear that the fraudulent joinder rule does not apply to attempted joinders that occur after an action is removed. Because § 1447(e) gives the court discretion to allow the addition of nondiverse defendants after removal, "[t]here is no need ... for a doctrine that ignores parties who are fraudulently joined after removal, for such parties would never be allowed to become defendants in the first place." *Cobb v. Delta Exports, Inc.,* 186 F.3d 675, 678 (5th Cir.1999); *see also Mayes,* 198 F.3d at 461 ("[T]he fraudulent joinder doctrine ... has no effect once the district court actually possesses jurisdiction—including after the case has been removed.").

Accordingly, in a proper § 1447(e) analysis, the first question to resolve is whether the new party is sought for the purpose of defeating diversity jurisdiction. The plaintiffs claim to have a legitimate cause of action against PAI. They allege violations of the Virginia Consumer Protection Act ("VCPA"), Va.Code Ann. § 59.1–196 to –207 (Michie 2001), conspiracy to violate state and federal laws relating to unfair and deceptive business practices, and unjust enrichment.

The defendants argue that the purpose of the proposed amendment is obvious in that the plaintiffs have admitted hostility to the federal court's jurisdiction.[10] The defendants submit that, with the exception of adding a nondiverse defendant, the revisions contained in the proposed amended complaint are minor; plaintiffs did little more than shuffle the paragraphs and include hearsay statements from unidentified sources. They also contend that the new purported case against PAI is unsupported by any discovery, and draw the court's attention to the suspicious fact that the amendment was filed only three days after entry of the notice of removal. Furthermore, they contend, PAI's liability is vicariously based upon the actions of Norton, who is already a party to the lawsuit.[11] The defendants thus argue that "the mere naming of a nondiverse corporate defendant whose exposure is at best derivative should give strong inference of improper motive." (Dr. Norton's Opp'n to Mot. for Leave to Amend at 5.) The defendants contend that the plaintiffs wish to add PAI only because their initial attempt to defeat removal failed upon their discovery that Dr. Brohi is not a Virginia resident, as alleged in the initial bill of complaint. They supply three reasons why the plaintiffs' claims against PAI are futile.

The defendants contend that the plaintiff McCauley cannot maintain an action

**10.** Mr. Yeary, one of the plaintiffs' attorneys, is quoted in reference to this case as saying that "large corporations" have an "edge" in federal court. Laurence Hammack, *Plaintiffs Drop Doctor from OxyContin Suit; Trial Venue Will be Decided Later,* Roanoke Times & World News, Oct. 10, 2001, at B5.

**11.** Norton argues that because PAI is only a support and billing agency, and not a health care provider, it cannot even be held vicariously liable for Norton's actions and therefore no claim would lie against it.

against PAI under the VCPA because PAI is not a "supplier" as defined in Virginia Code section 59.1–198. The term "supplier" refers to "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services . . . ." Va.Code Ann. § 59.1–198. Because Norton merely prescribed OxyContin, the defendants assert that there was no sale or distribution by either the doctor or PAI.

The plaintiffs point out that the defendants cite no Virginia cases on this issue and that other states acknowledge that medical service providers are subject to consumer protection statutes. *See Investigators, Inc. v. Harvey,* 53 Or.App. 586, 633 P.2d 6, 8–9 (1981) (dentist); *Chalfin v. Beverly Enters., Inc.,* 741 F.Supp. 1162, 1174–76 (E.D.Pa.1989) (nursing home).

The defendants also argue that health care providers are excluded under the VCPA due to its provision that "[n]othing in this chapter shall apply to . . . [a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States . . . ." Va.Code Ann. § 59.1–199(A). Because the health care profession is so carefully regulated by the laws of Virginia, the defendants assert that the VCPA does not apply to health care providers. In *Ott v. Baker,* No. L00–566, 2000 WL 33340627, at *2 (Va. Cir. Ct. May 25, 2000), a Virginia trial court held that health providers are not covered under the VCPA because of this exclusionary language.

In response, the plaintiffs argue that the VCPA is a remedial statute, and as such, all exemptions should be narrowly read. The plaintiffs contend that almost every consumer activity is regulated to some degree and to exclude the actions of PAI merely because health care is a regulated profession is too broad an interpretation. *See Valley Acceptance Corp. v. Glasby,* 230

Va. 422, 337 S.E.2d 291, 298 (1985). If the General Assembly had wanted to exclude health care professionals from the VCPA, according to the plaintiffs, they easily could have added an explicit exclusion, similar to the provisions relating to certain savings institutions and real estate licensees. *See* Va.Code Ann. § 59.1–199(D), (F).

The plaintiffs contend that *Ott v. Baker* addressed the licensing of a hospital and the legality of an abortion, both of which are governed by other Virginia statutes. However, there is no Virginia law authorizing physicians to make misleading representations about prescribed drugs, nor are there any statutes which address the standard of care in prescribing medications. As a result, they submit, the aspects of the health care profession that are at issue in this case are not authorized under Virginia or federal law and thus are not excluded from VCPA coverage.

Finally, the defendants argue that the plaintiffs attempt to join PAI under what amounts to a medical malpractice claim based on PAI's respondeat superior liability for Dr. Norton's act of prescribing OxyContin. The defendants argue that the addition of a medical malpractice claim to a products liability action against the manufacturers of OxyContin is misjoinder. *See Lee v. Mann,* No. LE–424–1, 2000 WL 724046, at *2 (Va. Cir. Ct. Apr. 5, 2000) (deciding that claims against the manufacturer of a diet drug for products liability and claims against the prescribing physician for medical malpractice could not be joined).

The plaintiffs respond that the claims against PAI are not grounded in malpractice; they allege violations of the VCPA as well as conspiracy and unjust enrichment. Therefore, they assert, there is no misjoinder of claims.

The second factor to consider in this § 1447(e) analysis is whether the plaintiffs were dilatory in seeking amendment. According to plaintiffs' counsel, McCauley did not advise his attorneys that his treatment by Norton was conducted at PAI until June 29, 2001, fourteen days after the original bill of complaint had been filed. The plaintiffs claim that they attempted to file their amended complaint adding PAI on July 13, but were unable to do so because an answer had just been filed. On July 17, the plaintiffs requested leave to amend their complaint. Although they sought leave to amend three days after removal of the case, they claim that the decision to add PAI was made prior to removal, and that counsel drafted the amended complaint before receiving any notice that the case had been removed.

On the other hand, it is established that McCauley, the only plaintiff with any connection to PAI, knew of PAI's existence before the action was filed. The fact that he did not inform his attorneys until after the original suit was filed is not determinative. As the defendants argue, it is what the plaintiff knew, not what his attorneys knew, that is important. *See Sexton v. G & K Servs., Inc.*, 51 F.Supp.2d 1311, 1314 (M.D.Ala.1999) ("[T]he [p]laintiff could have ascertained the identity of Mailon Boyd prior to filing suit and prior to removal of this case, merely by looking at the contract, if including him as a defendant had actually been important to his case."). Furthermore, McCauley's attorneys would have known of PAI's existence had they merely reviewed their client's medical records before filing suit, since PAI's name appeared on the records.[12]

Next, the court should consider whether the plaintiff McCauley will be injured if amendment is denied. He argues that

because Norton is in prison and incapable of earning income, recovery against him will be limited. Therefore, he wishes to collect from PAI, believing that its assets may be greater than those of Norton. He also argues that discovery will be expedited if PAI is joined, considering Norton's current situation.

The defendants submit that McCauley will not be injured because there is no economic benefit to joining PAI. Norton is the sole shareholder of PAI and, therefore, McCauley can reach all of the assets of PAI by obtaining a judgment against Norton. Furthermore, according to the evidence before the court, PAI is insolvent. It ceased all active operations on December 31, 2000, and its only asset is its accounts receivable, which are subject to liens and assessments, and are inadequate to satisfy those obligations.

The court has discretion to deny the amendment upon consideration of all the equities, and a significant factor is whether the plaintiffs are forum shopping. The timing of the plaintiffs' request for amendment is suspicious. Although counsel claims to have prepared the amended complaint prior to any notice of removal, the fact remains that the plaintiffs seek to have the case heard in state court and adding a nondiverse defendant is the quickest route to remand. They had every opportunity to learn of PAI prior to filing their original complaint; McCauley knew of the entity's existence and his attorneys could easily have discovered PAI's potential involvement by reviewing the medical records. Yet they did not file their motion to add PAI until after the notice of removal in which they first learned that Dr. Brohi was not a Virginia resident.

---

**12.** A patient has a right to her medical records, and Virginia law affords a speedy and inexpensive remedy if medical records are withheld from a patient or her attorney. *See* Va.Code Ann. § 8.01–413 (Michie Supp. 2001).

Furthermore, PAI is not an indispensable party to this case. At best, only one of the plaintiffs has any claim against PAI.[13] The defendants argue with some merit that even plaintiff McCauley has no cause of action against PAI, although I cannot say that they meet the strict fraudulent joinder standard by demonstrating that there is no possibility of success. As the plaintiffs note, "courts should minimize threshold litigation over jurisdiction." *Hartley*, 187 F.3d at 425. There is no need at this point to decide the ultimate merits of the claims against PAI. The fact that they are arguable is sufficient to convince me that the plaintiffs were scrambling for a Virginia resident to sue and did their best to squeeze PAI into existing causes of action against the manufacturer and physician defendants.

The plaintiffs do not stand to gain much, if anything, from the addition of PAI as a defendant in this case. According to Mrs. Norton's affidavit, PAI is insolvent and, should he win the case, the plaintiff McCauley would be unable to collect any judgment against the company. Discovery of any relevant records should in no way be hindered due to Norton's presence in prison since Mrs. Norton and other former PAI employees will be subject to subpoena and available to be deposed. Thus, there is no unfair prejudice to the plaintiffs in the denial of the motion.

In my opinion, the equities weigh in favor of the defendants. The plaintiffs' motive is evident, their delay avoidable, and their interests protected. It is the defendants who will be prejudiced should they lose their federal forum, to which they now have a right.[14]

## III

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion for Leave to File Amended Complaint (Doc. No. 8) is denied;

2. The Motion to Remand (Doc. No. 32) is denied;

3. The Motion to Sever Claims and Parties (Doc. No. 50) is denied without prejudice; and

4. The Motion for Hearing on Purdue's Motion to Sever Claims and Parties (Doc. No. 54) is denied as moot.

---

**13.** While the plaintiffs seek to represent class members, they do not seek to represent a class consisting of Norton's former patients. (Bill of Compl. ¶ 37.)

**14.** Purdue has moved to sever the action against Norton pursuant to Federal Rule of Civil Procedure 21. However, at least at this time, I find sufficient connection among the claims and parties. The defendants may renew their motion at a later date, when more facts have been developed.