## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Car Pawn of Virginia, Inc.

December 5, 1995

Case No. HG-402-3

By Judge T. J. Markow

This matter came before the court on October 11, 1995, for argument on the Commonwealth's Motion for Summary Judgment. The parties stipulated to all the relevant facts concerning the matter and conceded that the remaining issues are questions of law. This court will decide whether certificates of title to automobiles are a proper subject of pawn, whether Car Pawn of Virginia is a bona fide pawnbroker, and whether the defendant has violated the Consumer Finance Act (CFA), Collision Damage Waiver Act (CDWA), the Virginia Consumer Protection Act (VCPA), or the Virginia Pawnbroker Statute (VPS).

The stipulated facts are summarized as follows. Car Pawn, a Virginia corporation, was licensed as a pawnbroker by the Circuit Court for the City of Norfolk on September 30, 1993. The business does not have and has never held a finance license from the State Corporation Commission. It advertises in various publications circulated on military bases and in stores in Tidewater Virginia. Car Pawn's business plan involves lending money in amounts from $100 to $2,500 to consumers who agree to pawn their automobiles as security but who are allowed to retain possession by an ostensible lease-back from Car Pawn. The certificate of title to the vehicle and a set of keys remain with Car Pawn during the transaction. The customer receives a pawn ticket.

Persons who wish to rent their car during the loan period enter a rental agreement obligating them to pay, in addition to the principal amount, a monthly damage waiver fee (20% of the loan) if the vehicle is not covered by collision insurance. If the customer's vehicle is covered by collision insurance, Car Pawn could be added to the insurance policy without an additional charge by the insurer. Adding Car Pawn as an insured eliminates the damage waiver fee from the customer's charges. Prior to October, 1994, even customers with collision insurance were required to pay the damage waiver fee. Car Pawn also required customers, as of January, 1995, to sign an option statement to either leave the vehicle with Car Pawn, place Car Pawn on their insurance policy, or purchase the limited damage waiver. In practice, few, if any, customers left their cars with Car Pawn. In fact, its advertisements touted that one could borrow by pawning his car but still have the use of the car.

The principal amount of Car Pawn loans includes the damage waiver fee. Each loan costs the consumer interest amounting to an annual percentage rate of 60% of the borrowed amount. Customers are also charged a one-time fee of $6.00 for DMV lien registration and $2.00 for memorandum fees. A customer can redeem at the appropriate time or renew the pawn transaction by paying a fee less than the redemption amount.

### 1. *Has a Pawn Transaction Been Created?*

Essentially, the question is whether actual possession of the automobile is required or whether possession of the certificate of title is sufficient to create a pawn of the automobile. Defendant asserts that the pawn of titles to automobiles is a legitimate pawn transaction since it is not prohibited by statute. Specifically, Car Pawn claims that it retains constructive possession of the vehicles by actually possessing the certificate of title, thus completing the pledge and possession aspect of pawnbroking. In contrast, the Commonwealth asserts that delivery and possession of automotive titles does not create a proper pawn transaction and argues further that pawning demands actual possession of the pledged item. The court agrees.

Defendant believes that the ambiguity relating to the word possession used within the VPS should be construed to permit constructive possession because the pawnbroker statute is penal in nature. While it is true that this statute is penal and must be construed against the state, courts first must discover the legislative intent behind the law and give it effect. *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337 (1983), citing *Tiller v.*

*Commonwealth*, 193 Va. 418, 423, 69 S.E. 441 (1952). Plain meanings of words are preferred over the narrow constructions. *Id.*

Although regulations governing pawnbrokers do not define a "pawn," the statutory definition of a pawnbroker requires "the pledge and possession of personal property" by the lender. Code of Virginia § 54.1-4000 (1950). Moreover, pledge is defined as "a deposit of personal effects, not to be taken back, but on payment of a certain sum, by express stipulation or on the course of trade." *Gilliat v. Lynch*, 29 Va. (2 Leigh) 493, 500 (1831). *Black's Law Dictionary* provides similar definitions. *Black's* describes a "pawn" as "a bailment of goods to a creditor, as security for some debt or engagement." *Black's Law Dictionary* 1128 (6th ed. 1991). Clearly, the definitions permit delivery of the pawned item itself, yet there is no suggestion that delivery of and possession of an item's title alone will suffice.

While defendant offers as authority the decision of the Supreme Court of Alabama which permitted a pawnbroker to take constructive possession of an automobile by taking a certificate of title, this Court finds that opinion unpersuasive. See *Floyd v. Title Exchange and Pawn of Anniston*, 620 So. 2d 576 (Ala. 1993).

Car Pawn argues by analogy that the General Assembly's failure to expressly demand "actual possession" within the Pawnbroker Statute, as the Assembly had done in Va. Code Ann. §§ 20-125(8) and 55-3, allows a pawnbroker to take constructive possession. Another statute, § 8.7-102 relied upon by defendant was taken from the U.C.C. and adopted by the General Assembly. By adopting the Comments to that section, clarifying the type of possession necessary, the Assembly indicated a need to allow for constructive and actual possession in that instance. However, there is no indication from the General Assembly of a similar intent concerning the Virginia Pawnbroker Statute.

Moreover, the very nature of a pawn by "pledge and possession" compels the actual possession of the pawned item; otherwise, the General Assembly would have no need for the "and possession" language given the aforementioned definition of a pledge.

Holding title only is not the operation of a traditional pawn. Historically, items deposited with a pawnbroker remained in the possession of that pawnbroker. *Pendleton v. American Title Brokers*, 754 F. Supp. 860, 865 (S.D. Ala. 1991). Absent the automobile, vehicular titles are virtually worthless. For as defendants have proffered, it would be difficult to sell an automobile without the title. Conversely, it would be difficult to obtain any

value for a title when no vehicle is possessed. Essentially, there is no longer a pawn of property when that property is not retained. The transaction is simply a loan with property listed as collateral.

Furthermore, certificates of title normally are considered simply evidences of ownership. *Black's Law Dictionary* 227 (6th ed. 1990). When security interests are recorded, titles also serve as written evidence of indebtedness. *Credit Corp. v. Kaplan*, 198 Va. 67, 73, 92 S.E.2d 359 (1956); see also Va. Code Ann. § 46.2-638. The Virginia Pawnbroker Statute explicitly lists "written or printed evidences of indebtedness" as one of two things that do not constitute permissible items pledged to pawnbrokers. Va. Code Ann. § 54.1-4000. Both parties have stipulated that Car Pawn has recorded its security interests on the certificates of title since January of 1994. Therefore, these titles serve as evidence of indebtedness. As such, the titles are not permissible subjects of pawn.

## 2. *Is Car Pawn a Bona Fide Pawnbroker?*

Plaintiff argues that Car Pawn is not conducting bona fide pawnbroking business when renting cars back to the customers while retaining a set of keys and the certificate of title. In the eyes of the Commonwealth, such a transaction evades the laws of the CFA in violation of Va. Code Ann. § 6.1-251.

Any "bona fide pawnbroking business" is exempt from the Consumer Finance Act. Va. Code Ann. § 6.1-250. Therefore, the court must construe the meaning of this statute. Its language suggests that the legislature intended to exempt only those persons legitimately engaged in pawnbroking, not just any person licensed as a pawnbroker. Va. Code Ann. § 6.1-250 states explicitly "nor shall this chapter apply to any . . . bona fide pawnbroking business transacted under pawnbroker's license . . . ." "Bona fide" as defined in *Black's Law Dictionary* means "truly; actually; without simulation or pretense; without notice of fraud." *Black's* at 177.

Several factors lead the court to conclude that Car Pawn does not transact a bona fide pawnbroking business concerning the pawn of automobiles. First, Car Pawn actually accepts the certificates of title to the vehicles while claiming that the activity constitutes pawn of the vehicles only. Second, there is no suggestion that Car Pawn actually exerts any physical control over the allegedly pawned vehicles except during repossession, not even to inspect the rented vehicles. Third, the transactions essentially create small loans for undefined periods. Pawns may be renewed indefinitely by payments of amounts below redemption values. The

transaction looks extremely like a loan where monthly installments are made so that the borrower does not default and lose his collateral. Finally, before October of 1994, Car Pawn raised revenue by charging all its rental customers a collision damage waiver fee. This fee, which basically amounts to an additional finance charge, extracts more interest from the customer under an assumed title.

### 3. *Has Car Pawn Violated the Consumer Finance Act?*

The Consumer Finance Act is a remedial statute. *Valley Acceptance Corp. v. Glasby*, 230 Va. 422, 428, 337 S.E.2d 291 (1985); citing *Sweat v. Commonwealth*, 152 Va. 1041, 1057, 148 S.E. 774, 778 (1929). Courts must interpret the Act liberally to prevent evasion of its provisions. *Bowman v. Commonwealth*, 201 Va. 656, 661, 112 S.E.2d 887, 891 (1960). Va. Code Ann. § 6.1-251 applies the regulations governing small loans "to any person who seeks to evade" the statute by "any devise, subterfuge, or pretense whatsoever . . . ."

To determine whether a transaction violates the provisions of the CFA, a court must examine the substance of the transaction. *Van Dyke v. Commonwealth*, 178 Va. 418, 423-24, 17 S.E.2d 366, 369 (1941) ("mere form is immaterial, but that it is the substance which must be considered"). *Id.* Applying the rule, the *Valley* court found that a lender had violated the Consumer Finance Act with deceptive devise.[1] Explaining its decision, the court stated that allowing the lender to avoid the Act would essentially "gut the Act because [it] would thereby allow a lender to escape the Act by doing exactly what it forbids" thus "rendering the Act virtually meaningless." 230 Va. at 431.

This court finds that Car Pawn is essentially an unlicensed finance business which violates § 6.1-251 of the Consumer Finance Act. Notwithstanding that Car Pawn attempts to receive pawns of automobiles, the business does not actually retain the pawned vehicles in most cases. Moreover, if redemption does not occur within the stated period, the customer may continually renew the pawn indefinitely. In form, this transaction mimics a pawn; at heart it is simply a small loan for an extended period and with an excessive interest rate. By obtaining a pawnbroker's license, Car Pawn seeks to escape the lower statutory interest rate of twelve per-

---

[1] Loans made by the President of a mortgage company and not the company itself, though in the form of mortgages, were clearly not mortgages but small loans encumbering the homes of the customers with excessive interest rates.

cent (12%). Borrowers who attain the collision damage waivers pay more than 60% annually in charges connected to their loans.[2]

The Consumer Finance Act originated to protect needy consumers from unjust terms and exploitation surrounding lending practices. *Valley Acceptance Corp. v. Glasby, supra*, at 428-29. If Car Pawn is allowed to use one law to obstruct another, the consumer will be left unprotected. In the words of the Virginia Supreme Court, this statute would be meaningless.

### 4. *Has Car Pawn Violated the Collision Damage Waiver Act?*

The Commonwealth complains that the rental agreement, covering rental of the pawned automobiles by the owners of the automobile, fails to provide the required notice under Va. Code Ann. § 59.1-207.31 regarding collision damage waivers. Defendant denies that the CDWA applies to its operation. The court agrees with the Commonwealth.

Car Pawn admits that it allows the pawning consumer to rent back their pawned automobile from the pawn operation. The rental agreement executed by customers places responsibility for any damages to the vehicle on the customer. No evidence contradicts or denies that these pawned cars are not passenger vehicles as defined within the Act. By statute, a "rental motor vehicle" is simply a private passenger or commercial vehicle available for lease once a rental agreement is entered. Va. Code Ann. § 59.1-207.30. "Lessors" are those who provide rental motor vehicles. *Id.* According to the facts and the law, Car Pawn is a lessor of rental motor vehicles covered by the statute. In fact, Car Pawn is listed as the lessor on its own rental agreement.

By omitting the required statutory notice concerning the collision damage waiver, Car Pawn violates the CDWA. The notice within the rental agreement does not include the requisite statutory language. Va. Code Ann. § 59.1-207.31. Instead of referencing automotive insurance, Car Pawn's statement mentions "homeowner's or apartment dweller's" insurance. Additionally, the notice used by Car Pawn lacks any suggestion that the collision damage waiver is "not mandatory and may be waived." Finally, the notices are printed neither in boldface nor ten-point type as required by statute.

---

[2] Each damage waiver fee is 20% of the original amount borrowed. Upon renewal, the borrowed amount would include the original amount, plus the last month's damage waiver fee.

### 5. *Has Car Pawn Violated the Virginia Consumer Protection Act?*

Car Pawn is also accused of violating the VCPA by misrepresenting its business and failing to disclose pertinent information to customers. The court finds that Car Pawn has violated the VCPA.

Va. Code Ann. § 59.1-200(5) prohibits suppliers from misrepresenting the "characteristics, ingredients, uses or benefits of goods or services." Car Pawn stipulated that it is a "supplier" which provides "goods" and "services" as defined by the Virginia Consumer Protection Act. An organization can also violate the VCPA by committing violations of the Collision Damage Waiver Act. Va. Code Ann. § 59.1-207.33.

Applying the statutes to these facts, at least two types of violations occurred. The stipulations reveal that Car Pawn advertised its operation with signs and advertisements containing the slogan "Pawn your title, keep your car." Still Car Pawn describes its business as a pawn of automobiles. Because the vehicles are the actual subjects of pawn, the slogan misrepresents the character of the transaction and violates Va. Code Ann. § 59.1-200(5).

Car Pawn's second violation of the VCPA, which is discussed above, involves the Collision Damage Waiver Act. While Car Pawn failed to disclose the possibility of existing insurance under the borrower's current policy, the court lacks evidence sufficient to find that Car Pawn has violated the CDWA and the VCPA by misrepresenting the difficulty of adding Car Pawn as an additional insured party under the customer's policy. Neither the CDWA nor the VCPA requires a pawnbroker to voluntarily disclose to the borrower the process of adding the lender to the insurance policy. The CDWA simply requires the prescribed disclosure previously mentioned. Va. Code Ann. § 59.1-207.31. Finally, no stipulations uncovered a failure to disclose or false statement concerning the process adding an additional insured.

### 6. *What Remedies Are Available?*

The Commonwealth seeks a variety of remedies for the violations alleged in its amended Bill of Complaint. First, the plaintiff seeks declaratory judgment against Car Pawn for violations of the various Acts and declaratory judgment voiding all Car Pawn's transactions which assessed interest over the statutorily permitted rates. Permanent injunctions are sought to prohibit Car Pawn from accepting the pawn of automotive titles and labelling them car pawns. Also, injunctive relief is sought to prohibit Car Pawn from collecting or attempting to collect any payments from the

victimized borrowers. Plaintiff further asks the court to impose civil penalties for each statutory violation.

Va. Code Ann. § 6.1-308 provides that an organization violating the Consumer Finance Act shall be prohibited from collecting or retaining any payments or charges from persons loaned funds in violation of the Act. Moreover, each transaction conducted in violation of the statute shall be null and void. *Id.* Circuit Courts are authorized to appoint a receiver and order impoundage and liquidation of the property of a violating entity to the extent necessary to identify the injured parties and to reimburse them. Va. Code Ann. § 6.1-303(A)(1).

Penalties for violations of the Virginia Consumer Protection Act extend beyond the arena of restitution. Va. Code Ann. § 59.1-206 authorizes the assessment of penalties in amounts up to $1,000 for each separate and willful violation of the VCPA. Although the injured customers are entitled to damages, costs, and fees for violations of the VCPA, the court may also order or decree other remedies as necessary to restore the individual's property taken during violative transactions. Va. Code Ann. § 59.1-207. Lastly, the Attorney General may collect monetary relief or seek injunctive relief in addition to collecting attorney's fees and costs pursuant to Va. Code Ann. §§ 6.1-303(A)(3) and 59.1-206.

According to the findings of the court, the Commonwealth is entitled to the declaratory judgments, permanent injunctive relief, appointment of a receiver, and attorney's fees and costs. However, judgment for the Commonwealth reimbursing all amounts paid by borrowers in violation of the laws cannot be rendered at this time because the facts fail to sufficiently reveal such amounts. Penalties will not be assessed against Car Pawn as there is no evidence demonstrating a willful violation of the Collision Damage Waiver Act or the Virginia Consumer Protection Act. The Court believes that Car Pawn could reasonably believe these provisions were inapplicable to its establishment.

### Conclusion

In summary, the court has determined that Car Pawn is not operating a bona fide pawnbroking business which is exempt from the Consumer Finance Act. The court further finds that Car Pawn has violated the Collision Damage Waiver Act by failing to present the statutory notice to rental customers. Finally, the court finds that Car Pawn violated the Virginia Consumer Protection Act by misrepresenting the characteristics, uses, and

420

benefits of its services and violating the Collision Damage Waiver Act. Judgment shall be for the Commonwealth concerning these violations.