Joynes, J.
The seventh section of the act passed. March 3, 1866, entitled “An act imposing a tax on oysters ” (Sess. Acts 1865-6, p. 75), contains the following provision: “ Every captain or officer of a vessel which shall be employed in carrying oysters taken in the waters of Virginia, shall obtain from an inspector-a license, for which he shall pay to said inspector a tax. of three dollars per ton for every ton said vessel may measure, according to the custom-house enrollment or license; and it shall be the duty of every such captain or officer to have said license framed, and so set or-placed upon the quarter-deck or binnacle of his vessel,, as to be exposed to the full view of every person who-may board said vessel; which license shall authorize such vessel to carry away oysters for one year.”
The twelfth section of the act authorizes the inspector to attach the vessel and appurtenances of any captain or officer failing or refusing to obtain the license and pay the tax provided for in the seventh section; and invests him with all the powers and duties of a, sheriff for the collection of other taxes.
Sundry vessels owned by the plaintiffs were attached and seized by the defendant Drummond, an inspector, and were advertised for sale, for the non-payment of' the license tax imposed by the.seventh section; and. *421 "the bill in this case was filed to enjoin the sale. The •only ground alleged for the injunction is, that the provision quoted from the seventh section of the statute is in violation of that part of section 10, article I, of the constitution of the United States, which declares ‘that “ Uo State shall, without the consent of Congress, lay any duty of tonnage.” The injunction was awarded; but, at the final hearing, it was dissolved, and the bill dismissed.
Under the articles of confederation, the power to regulate commerce, and to lay imposts and duties, belonged to the States respectively, subject only to the restriction contained in the third section of the sixth -article, that no State should lay any duties or imposts which might interfere with any stipulations in treaties entered into by the United States. Some of the States, from their geographical situation, were thus placed at "the mercy of those through which their imports and •exports had to pass. This independent right of the ■several States was often exercised, in an undue degree, under the influence of local interests and jealousies, and led to the adoption of conflicting, and even hostile •and oppressive regulations. The pressure of this condition of things led, at an early period after the close •of the war, to great complaint, and movements were made in Congress, and on the part of individual States, for the purpose of establishing uniformity in the commercial regulations of the several States, as “ necessary to their common interest, and their permanent harmony,” and was the. main cause which led to the adoption of the present constitution. The evils then felt would not have been effectually cured, however, by •conferring upon Congress power to regulate commerce, •even if the grant of .that power was exclusive of a like power in the several States. The power to regulate commerce.does not carry with it the power of taxation for revenue. , The power to regulate commerce *422 does not give to Congress the power to tax it. Congress derives that power from the express grant of power “ to lay and collect taxes, duties, imposts and excises.” Hor does the grant to Congress of the power to regulate commerce, even if construed to be exclusive of like power in the States, prohibit the States from making it the subject of taxation within their own jurisdiction. The inability of the States to levy Sll-Ck taxation, results altogether from the restrictions contained, in section 10, article I, of the constitution. Gibbons v. Ogden, 9 Wheat. U. S. R. 1; Passenger Cases, 7 How. U. S. R. 283; see Taney, C. J., pp. 479, 480; Federalist, No. 32.
One of the familiar modes of imposing a tax on commerce, is by laying duties on imports and exports. If this power had been left to the several States, without restraint, they could, by means of it, have brought about substantially the same evil which was so much complained of under the confederation. It was, therefore, made the subject of special prohibition by the several clauses of section 10, article I, of the constitution.
■ Another familiar mode of taxing commerce is by a tax upon the vessel, the vehicle of commerce, known as a tonnage tax, or a “ duty of tonnage,” as it is called in the constitution. A grievous burden might be laid upon any trade, by a tax upon the vehicle in which the trade is carried on, as by regulations applicable to the trade itself, or by taxes upon the articles which are the subjects of the trade. And, accordingly, this power is restricted by the third clause of section 10 of the same article; which provides that “ no State shall, without the consent of Congress, lay any duty of tonnage.” This prohibition is general—“any duty of tonnage ”—and is not confined to any kind or kinds-of commerce, or to any class of vessels.
In Gibbons v. Ogden, Marshall, C. J., said: “A duly *423 of tonnage is as much a tax as a duty on imports or exports; and the same reason which induced the prohibition of those taxes, extends to this also.” And in Steamship Company v. Portwardens, 6 Wall. U. S. R. 31, Chase, C. J., said, delivering the opinion of the whole court: “ The general prohibition upon the States against laying duties on imports or exports, would have been ineffectual, if it had not been extended to duties on the ships which are the vehicles of commerce. This extension was doubtless intended by the prohibition of any duty of tonnage.”
A duty of tonnage, in the most obvious sense of the word, imports a tax or duty proportioned to the tonnage or size of the vessel. This description of tax has usually been imposed in that form, both in England and this country, and from the form, it doubtless received its appellation. But, in the case cited from 6 Wallace 31, the Supreme court held that “it was not only a pro rata tax that was prohibited, hut any duty on the ship, whether a fixed sum upon the whole tonnage, or a sum to he ascertained by comparing the amount of tonnage with the rate of duty.” Accordingly, in that case, the court held an act to he unconstitutional which laid a uniform tax of five dollars upon all vessels arriving at the port of New Orleans, without regard to size. And it seems, from what was said in that case, that the fact that the tax does not go to the State, hut to wardens of the port, whose duly it is, when called upon, to render service to vessels in the port, and purports, by the terms of the law, to he designed to provide compensation for the wardens, will not exempt it from condemnation as a duty of tonnage, if it would he so regarded, in the absence of such an appropriation of the money. And in that case the tax was held to he a regulation of commerce, and also a duty of tonnage, and forbidden on both grounds.
It is immaterial what form of expression is used in *424 describing tbe tax, or tbe object or tbe subject of it, if, upon looking at its real character and effect, it is found ■ to come within the meaning of a duty of tonnage. The question is one of substance and not of form or name. 12 Wheat. U. S. R. 445; 12 How. U. S. R. 314; 24 How. U. S. R. 169. Thus, the tax, instead of being called a tax on the vessel, may be called a tax upon the master or upon the cargo; it may purport to be a tax upon some privilege to be enjoyed by the vessel, as the privilege of coming into a certain port, or of riding at a particular anchorage, or of being served, as she may have occasion, by the wardens of a port, or the privilege of engaging in a particular trade—as the trade in wood, in corn, or in oysters—yet, if really and substantially it is' a duty of tonnage, it is equally within the prohibition as if the tax had been called by its right name. Hor will it alter the case if the tax is employed by the State as a necessary means, or as the best means, of enforcing some law which is -within its constitutional authority. A tonnage tax is a means prohibited to the States, without the consent of congress; and cannot, without such consent, be employed for one purpose any more than another.
A duty of tonnage may be local in its application, as in the cases in 6 Wallace 31, and 3 Strobbert Law R. 594. It may apply only to vessels of a particular class, or of not less than a particular size, or to vessels of a particular construction. So it may. apply only to vessels engaged in a particular trade, or the vessels which are liable to it may be ascertained by any rule of discrimination which the State may choose to adopt. To the extent of the vessels to which it applies, the tax is liable to the same constitutional objections as if it embraced all vessels whatever, without exception.
The mere fact that a tax is graduated in amount by the tonnage of a vessel, is not enough, of itself, to determine that it is duty of tonnage. ' As we have seen, *425 there may he a duty of tonnage which is not at a certain rate for tax. And so a tax otherwise lawful may be measured by a certain rate per ton of a vessel, and not be a duty of tonnage. In Lott, tax collector v. Mobile Trade Co., 43 Alab. R. 578, a tax upon vessels owned in the State, or property merely which a State has an acknowledged right to impose (6 Hamm. R. 522; 3 Gill’s R. 14; 9 Alab. R. 234), was held to be valid, though the amount to be paid by each vessel was proportioned to her tonnage. And so the fact that the tax is nominally upon a license to engage in the oyster trade, does not determine that it is not a tax upon the vessel as a vehicle or instrument of commerce—a duty of tonnage. The license is issued to furnish the tax payer with evidence that he has paid the tax, which is exacted in advance. If the same tax, collected in any other way, would be a tax on the vessel as a vehicle of commerce, the interposition of the license cannot change its character.
The State, being the owner of the native oysters in her waters, has a right to turn them to account for ■purposes of revenue by means of taxation; and it is insisted that she is authorized to employ such means ■for the collection of the tax as may seem to be most ■efficient. But this cannot be admitted. The State •cannot employ any means, however valuable or necessary it may be, which is prohibited to it by the supreme law, the constitution of the United States. Among such forbidden means, without the consent of congress, is a duty of tonnage. It is said, however, 'that the tax we are considering, is, in. effect, a tax on "the oysters, and not a tax on the vessel as a vehicle of conveyance. I cannot admit this proposition. The "tax is not exacted from the owner of the oysters, and is not in proportion to the quantity or value of the •oysters. It is a tax exacted from' the master of a vessel, who may or may not own either the vessel ’or the *426 oysters, in consideration of a privilege to be granted, to tbe vessel to engage in tbe carrying of oysters. Tbe tax is applicable to all vessels wherever owned,, and is not applicable to any vessel which does not carry oysters, and is not, therefore, a tax upon the vessel as-property. The license for which the tax is paid is not. a license to the master personally to engage in the oyster trade, for then he might substitute another vessel. The words of the statute are, that the license shall “ authorize the vessel to carry away oysters for one yea'r.” The license, therefore, is to the vessel herself; if she-is lost or destroyed the next day, the license is gone.. She must obtain the license and pay the tax, because-she caries oysters; or more properly, because she has a capacity to carry oysters, under the privilege conferred by the license, and the license is in proportion to her capacity. She is not licensed and taxed as a vehicle of, commerce generally, such as a vessel engaged in general trade, as cargoes offer; but she is licensed and taxed as the vehicle of a particular trade; upon her capacity to render service in a particular-trade, to wit, the trade in oysters. If the statute had. provided that no vessel should carry on any trade in. the waters of Virginia, without payment of a tax in. proportion to her capacity, for the privilege, it could, hardly be doubted, I apprehend, that the tax would, have been a duty of tonnage. The power to impose-such a tax would enable a state to harass commerce in-, the most vexatious and oppressive manner. It would enable the State, in a great measure, to defeat the wise and beneficent purposes of the constitution, in vesting-congress with the power to regulate commerce, and in denying to the States, without the consent of congress, the power to lay “any duty of tonnage.” "What difference can it make, in principle, that the law, being the same, in all other respects, applies only to the particular trade in oysters ? It seems to me, therefore, that. *427 the tax I am considering comes within the definition of a duty of tonnage. The case is a much stronger one than that cited from 6 Wallace, or that cited from 3 Strobhart.
It may he that such a tax as this may he the best means, or an indispensable means, of securing the tax on oysters. If so, the state is fortunately not absolutely debarred from the use of it. It may apply to congress for its consent, and if a proper case can he made out, it is to he presumed that congress would not withhold its consent.
In Lott v. Mobile Trade Co., before cited, the Supreme court of Alabama intimated an opinion, that the prohibition against a State laying “ any duty of tonnage,” did not apply to vessels engaged exclusively in the purely internal commerce of the State. The case, however, was decided on the ground that the tax in question was not a tonnage tax, hut a tax on property. It is not important, in this case, to consider whether this opinion is a sound one. The tax now under consideration is not confined by the statute to vessels engaged exclusively in internal commerce. It is a tax upon all vessels engaged in carrying oysters caught in the waters of Virginia. These vessels belong in Hunting creek, in the county of Accomac; and the hill alleges that they are engaged in carrying oysters from said creek “ to various ports.” They cannot reach any port of Virginia without crossing the Chesapeake hay. Such commerce cannot he called purely internal commerce. Congress cannot regulate purely internal commerce of a State, hut it regulates all commerce on the Chesapeake and its navigable tributaries. There is no reason to infer that these vessels traded exclusively to. Virginia ports; hut there is strong reason to infer the contrary. The number of vessels in this State engaged in purely internal commerce exclusively, is very small. Hunting creek is nearer to some of the ports of Mary *428 land than to aiiy port of Virginia. ,One of them, which is a very large centre of the oyster trade (Crisfield), and the terminus of a railroad leading to Philadelphia, is not more than some fifty miles off, and on the same side of the hay. Baltimore, the largest port 011 the tributaries of the Chesapeake, and the great centre of the oyster trade, is within a few hours’ run. And it may be mentioned, as a matter of common knowledge, that such small craft, while they usually trade with the largest port within convenient reach, because they are sure to find a ready market, which is all-important in case of a perishable cargo like oysters, often trade to one port or another, in or out of the State, as the winds favor or the markets at thé moment invite.
It was also contended in the argument, that the tax in question is a violation of that clause of the constitution which gives to Congress the power to regulate commerce. That point, however, was not fully argued on either side, and it need not be decided, as the case is disposed of on another ground. Besides, the case does not seem to be properly presented to raise that question.
■It was objected by the Attorney-General, that the appellants, being the owners of several vessels, by distinct and independent titles, and not having a common interest in all the vessels, could-not properly unite in the same bill to enjoin the sale of all the vessels. There is nothing in this objection. It is fully answered by Bull, &c. v. Read, 13 Gratt. 78.
I am, therefore, of opinion that the decree of the Circuit court should be reversed, and the injunction made perpetual: and that the appellee Drummond should pay the costs in both courts.
Christian and Staples, Js., concurred in the opinion of Joynes, J.
*429 Moncure, P.
The question in these eases is, whether the seventh section of the act passed March 3,1866, entitled “An act.imposing a tax on oysters” (Acts of Assembly, 1865-’6, p. 74, ch. 5),-is contrary to the constitution of the United States.
The only provisions of that constitution to which the said section can be said to be opposed, are the three following, which declare:
First. That congress shall have power “to regulate commerce with foreign nations, and among the several States, and with the Indian tribes.” Article I., section V11Í., clause 3.
Second. That “no State shall, without the consent of congress, lay any imposts or duties on imports or exports, except,” &e. Same article, section X., clause 2; and,
Third. “Xo State shall, without the consent of congress, lay any duty of tonnage,” &c. Same article and section, clause 3.
In regard to the first and second of these provisions, little need be said. The power to regulate commerce is given to congress, but it is not expressly denied to the States. Of course an exercise of the power by congress prevents any inconsistent exercise of such a power by the States. But an exercise of power by a State which may be perfectly consistent with the acts of congress, if any, on the subject, is constitutional, though it may, in its nature or effect, be a regulation of commerce between the States; especially if it does not discriminate against citizens of other States. If, therefore, the seventh section of the act of March 3, 1866, were a regulation of commerce, it would not be unconstitutional on that ground, because it is not inconsistent with any act of congress on the subject, and makes no such discrimination. ■ But it is not a regulation of commerce. It is no regulation of anything. It merely requires a license to be obtained by every cap *430 tain or officer of a vessel employed in carrying oysters taken in the waters of Virginia, without reference to the place, in or out of the State, to which they may be carried. It has no reference to commerce, either with foreign nations or among the several States; which is the only commerce over which congress has any control. All will admit that the State has exclusive control over commerce confined to her own limits. That oysters carried under such a license may possibly be carried to another State, cannot make the law a regulation of commerce, much less make it unconstitutional.
Then, in regard to the provision prohibiting a State, without the consent of congress, from laying any imposts or duties on imports or exports. Even if the law expressly imposed a duty on oysters carried from the waters of this State to any other State of the Union, it would not, on that ground, be unconstitutional; the Supreme court of the United States having recently decided, in effect, that this provision of the constitution applies only to foreign commerce, and not to inter-State commerce. Woodruff v. Parham, 8 Wall U. S. R. 123. But the law in question does not impose such a duty. It merely requires a license to be obtained for carrying oysters taken in the waters of the State, without reference to the jfiaee to which they may be carried. It places all other States and their citizens on the same footing, in this respect, with the State of Virginia and her citizens. If the law were void as to citizens of other States and valid only as to our own, it would discriminate against our own citizens; and that, too, in regard to a subject which is so peculiarly her own that she may lawfully exclude the citizens of all other States from any participation in it.
The only remaining and important question, therefore, is, whether the law under consideration lays a duty ‘on tonnage, in the meaning of the constitution ?
*431 I think it does not. A duty on tonnage, in this connection, is a tax on a vessel. A vessel is the only vehide of commerce on the high seas. A tax on a vessel, as such, is, in effect, a tax on commerce. And as ■the regulation of commerce on the high seas belongs to congress, the constitution therefore prohibits a State, without the consent of congress, from laying any duty of tonnage; that is, from laying any tax on a vessel as such. But, by the act in question, the tax is not laid on the vessel, but on the oysters, or the business of carrying them. The oysters in the waters of the State belong to her. She can do what she pleases Avith them, and entirely exclude, if she chooses, the citizens of other States from participating in them. While they remain public property, of course, she has no occasion to tax them. Being altogether her’s, she cannot tax her own property. Taxation is a means of appropriating to public use so much of private property as is needed for the purpose. But so soon as this public property becomes private, it then becomes a subject of taxation. It can become private only in the mode and on the terms prescribed by law. The mode and terms prescribed by law in regard to those who Avish to engage in the business of carrying oysters, are, that they shall obtain a license, by paying for it in proportion to the capacity of the vessel which they AAdsh to employ in the business. This is a mere means of ascertaining the amount of the tax which the State chooses to lay, she haAÚng a right to lay a tax of any amount on the subject. Ho owner of a vessel is subjected to the tax except by his oaaui act. He is not compelled, to engage in the oyster carrying business in the State. He is permitted to engage in it on certain terms, if he chooses. He may be excluded altogether from it, if the State chooses; and of course he may be excluded from it sub modo, or except on certain prescribed terms and conditions.
*432 Of course, I am speaking of oysters -which belong to the public at the time they are caught, and which, I believe, are the principal subject of the carrying business. That the vehicle in which the business is conducted is a vessel which is an ordinary vehicle of commerce, makes no difference. If oysters were caught on land they might be carried in a wagon, and the capacity of the wagon might be made the measure of the tax on the license for conducting the business. If such were the case, there would be no ground for objection to the tax as unconstitutional. But oysters are taken only in water, at a distance from land, and the business of carrying them can only be conducted in vessels. The only, or the most convenient, mode of taxing them, therefore, is to tax the business of carrying them, according to the capacity of the vessel engaged in the business. A tax collector cannot know when and where the oysters are to be taken, and cannot be present to take note of the quantity and collect the tax. By requiring the owners of all vessels engaged in the business to pay for such privilege in proportion to the capacity of the vessels, all difficulty is obviated, and such owners may carry all the oysters their vessels can carry, during the period for which such license is obtained. I do not think there is anything in all this which is at all in conflict with the letter or spirit of any provision of the constitution of the United States; while I think the mode of taxation may be eminently useful as a means of deriving revenue from a most valuable subject belonging to the State.
In these cases, all the appellants who complain of the tax are citizens of the State. They are protected by the most stringent laws from the competition of nonresidents. They- enjoy a monopoly of the business; and they object to the payment of the tax imposed by the State which secures to them such monopoly. The law, they say, is unconstitutional, because the Statq *433 cannot tax the business of carrying oysters from this State to another State; while they admit that the State can exclude non-residents from catching oysters in the waters thereof, or permitting their vessels to be used in that business, and thus secure the monopoly of it to themselves.
If the State has a right to license the business of carrying oysters within her limits, and grants a license to carry them, without specification as to place, it should be construed as a license to carry them within the State, and not as a license to carry them out of the State, if that be unconstitutional. The fact is, the State only licenses the business of “carrying oysters taken in the waters of Virginia.” The carrying of them to this point or that point, within or without the State, is not the business licensed, the consideration for which the tax is paid. The business is, the carrying. And the moment the vessel, being laden with her cargo, sets out on her journey, the consideration of the license, quo ad hoc, is received. It matters not to the State where the vessel goes. If her owner, who undoubtedly has a right to go to any part of the State, finds it to his interest, and chooses, to go to a port without the State, he surely has no good cause of complaint against the State on that account. But there is, in fact, nothing in these cases to show that the oysters were carried, or intended to be carried, out of the State; though I consider that fact as wholly immaterial.
I am of opinion that there is no error in the decrees of the Circuit court, and that they ought to be affirmed.
Anderson, J., concurred with Moncure, P.
Decree reversed.