Filed:  July 21, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-1944
(CA-98-61-4)

Rachel Alston,

Plaintiff - Appellant,

versus

Crown Auto, Incorporated,

Defendant - Appellee.

O R D E R

The court amends its opinion filed June 28, 2000, as follows:

On the cover sheet, section 1 -- the status is changed from "UNPUBLISHED" to "PUBLISHED."

On the cover sheet, section 6 -- the status line is corrected to read "Affirmed by published per curiam opinion."

On page 2, section 1 -- the reference to use of unpublished opinions as precedent is deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RACHEL ALSTON,
Plaintiff-Appellant,

v.                                                    No. 99-1944

CROWN AUTO, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Norman K. Moon, District Judge.
(CA-98-61-4)

Argued: June 9, 2000

Decided: June 28, 2000

Before LUTTIG and KING, Circuit Judges, and
Richard L. WILLIAMS, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by published per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Dean Domonoske, Chapel Hill, North Carolina,
for Appellant. James A.L. Daniel, DANIEL, VAUGHAN, MEDLEY
& SMITHERMAN, P.C., Danville, Virginia, for Appellee. **ON
BRIEF:** Elmer R. Woodard, Danville, Virginia, for Appellant. Robert
J. Smitherman, DANIEL, VAUGHAN, MEDLEY & SMITHER-
MAN, P.C., Danville, Virginia, for Appellee.

_____

_____

**OPINION**

PER CURIAM:

Rachel Alston sued Crown Auto, Inc., for various federal and state law violations arising out of her purchase of a car from Crown Auto. The district court granted Crown Auto's motion for summary judgment on all of Alston's claims. For the reasons that follow, we affirm.

I.

On November 28, 1997, Alston entered into a Retail Installment Sales Contract ("RISC") with Crown Auto, to purchase a 1987 Honda Accord for $5,281.60. Under the RISC, Alston was required to pay a ten-percent fee for any late payments. Alston made late payments on several occasions and was charged a ten-percent late fee. It is undisputed that under Virginia law, Crown Auto was not permitted to charge Alston a late fee in excess of five percent. See Va. Code § 6.1-330.80(A) ("Any lender or seller may impose a late charge for failure to make timely payment of any installment due on a debt . . . provided that such late charge does not exceed five percent of the amount of such installment payment . . .

In September 1998, Crown Auto repossessed Alston's car because she did not have required insurance. At that time, Crown Auto gave Alston a check for the amount in excess of five percent that she paid in late fees, plus interest. J.A. 41-42, 53.

Alston sued Crown Auto in federal district court under the federal Truth-in-Lending Act ("TILA") and on various state law grounds. The district court granted Crown Auto's motion for summary judgment on all claims. Alston now appeals.

II.

Alston argues that the district court erred when it granted summary judgment to Crown Auto on her TILA claim. Alston contends that

2

Crown Auto violated TILA when it failed to designate as a "finance charge" an $85.00 processing fee, as required under 15 U.S.C. § 1638(a)(3). Under TILA, a "finance charge" includes any charges "imposed by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a).

The district court found that Alston had produced no evidence to prove that the $85.00 fee was incident to the extension of credit and not charged in comparable cash transactions. The district court held that the fee was not a "finance charge" and therefore that Crown Auto did not violate TILA when it did not label it as such. We agree.

Crown Auto presented evidence that its general practice is to charge both cash and credit customers an $85.00 processing fee. Although Alston presented evidence that two cash customers negotiated with Crown Auto not to pay the processing fee, she has presented no evidence to refute Crown Auto's position that its general practice is to charge the $85.00 fee to all customers, credit and cash alike. Because Crown Auto's processing fee is payable in comparable cash transactions, we cannot conclude that the district court erred in concluding that the processing fee was not a "finance charge."[1]

III.

Alston also argues that the district court erred when it granted summary judgment to Crown Auto on her two state law claims, which we address below.

A.

Alston argues that the district court erred when it concluded that her loan from Crown Auto was not usurious. Under Virginia law, a loan is usurious if the creditor charges an interest rate higher than that

_____

[1] Alston also argues that she was charged two $85.00 processing fees. We agree with the district court, however, that the $85.00 processing fee was itemized separately on the handwritten form used during negotiations and was included in the sale price on the computer-generated form, and she was, therefore, charged only one $85.00 processing fee.

rate disclosed in the contract.[2] Alston maintains that, because Virginia law permits Crown Auto to charge only a five-percent late fee, and not the ten-percent late fee that it did charge, the excess late fee charged should be considered additional undisclosed interest. Therefore, she claims that Crown Auto actually charged her more than the eighteen-percent interest, which it disclosed and to which she agreed.

The district court held that the late fee is a penalty that is not subject to usury, and that the Virginia statute that directly addresses excess late fees provides the exclusive remedy under Virginia law. We agree.

Under Virginia law, a loan that is not usurious when made cannot be made usurious by subsequent events. See Ward's Adm'rs v. Cornett, 22 S.E. 494, 495 (Va. 1895) ("A debt to be usurious, must be so in the beginning. It cannot be made so by subsequent events. . . . If the obligor had paid the debt when the bond became due, he would not have incurred, even under the literal terms of the bond, any liability to pay the illegal interest stipulated for after its maturity. Where the debtor, by a punctual payment of the debt, may thus relieve himself and avoid the payment of the illegal interest stipulated for, it is not usury."); see also Pollard v. Baylors, 1819 WL 897 (Va. Nov. 27) ("[A] penalty inserted in a contract, from which a party may deliver himself, does not make the contract usurious."). Although Alston was subject to an illegal excess late fee if she failed to make payments on time, if she complied with her payment schedule she would not be subject to any illegal charges or excess interest. Therefore, under Virginia law, the loan was not usurious.

Alston responds to this reasoning by quoting Garrison v. First Federal Savings and Loan Assoc. of South Carolina, 402 S.E.2d 25 (Va. 1991), for the proposition that "any charge which cannot be attributed to either principal or to an allowed charge for collateral services

_____

[2] Under Virginia law, a creditor cannot charge more than twelve-percent interest, see Va. Code § 6.1-330.55, unless the seller and buyer expressly agree to a different rate, see Va. Code § 6.1-330.77 ("Any seller of goods or services who extends credit under a closed-end installment credit plan or arrangement may impose finance charges at such rate or rates as may be agreed upon by the seller and purchaser.").

4

is considered interest" for purposes of usury.**3** <u>Accord Byrd</u> v. <u>Sterling Mortgage Corp.</u>, 1994 WL 1031124 (Va. Cir. Ct. April 6, 1994) (unreported). That is, Alston argues that under <u>Garrison</u>, because the excess late fee cannot be attributed to principal or to an allowed charge, it is necessarily interest which exceeds the interest to which Alston agreed. However, both <u>Garrison</u> and <u>Byrd</u> address the question whether fees charged up front at the time the loan is made are to be considered "interest" for purposes of usury. Neither case, nor any other case Alston cites, stands for the relevant proposition that any future disallowed fees that could come due based on events subsequent to the signing of the loan could render the loan usurious. And, we are further convinced that excessive late fees are not to be considered in the determination whether a loan is usurious when made, because Virginia has a statute which directly addresses excessive late fees. <u>See</u> Va. Code § 6.1-330.80(C) ("Any provision for late charges in excess of the amount permitted in this section shall be void as to such excess but shall not otherwise affect the validity of the obligation."). This provision makes clear that the exclusive remedy is to void the amount in excess of the allowable fee but as well that no other obligation, including the obligation to pay the allowable late fee, is effected.

Here, Crown Auto did, as required under section 6.1-330.80, void the excess late fee and reimburse Alston. And, because Alston could have avoided any illegal late fee by making her payments on time, we conclude that the loan was not usurious when made.

B.

Alston also argues that Crown Auto's charge of an excessive late fee violated the Virginia Consumer Protection Act ("VCPA"), which makes unlawful:

_____

**3** Alston also argues that <u>Cornett</u> and <u>Pollard</u> are too old to be applicable to current usury statutes. However, she cites no cases or specific statutory provisions that conflict with this understanding of Virginia usury law. And <u>Garrison</u> itself borrows its understanding of what is interest at the time the contract is made from general usury principles articulated in a 1933 opinion.

> [u]sing in any contract . . . any . . . penalty clause . . . or attempting to collect any . . . penalties which are void or unenforceable under any otherwise applicable laws of this Commonwealth . . . .

Va. Code § 59.1-200(13). That is, Alston argues that Crown Auto unlawfully collected the ten-percent late fee, because the amount in excess of five percent was void or unenforceable under Virginia law, <u>see</u> Va. Code § 6.1-330.80(A).

The district court held that Alston could not show a genuine issue of material fact because there was no evidence to indicate that the ten-percent fee was misrepresented or hidden. We agree with Alston that there does not appear to be any requirement in section 59.1-200(13) that the penalty be misrepresented or hidden. However, we cannot conclude that the district court erred in granting Crown Auto's motion for summary judgment on this claim, because Alston has presented no evidence to indicate that she suffered a loss as a result of any violation of the VCPA.

Alston brought her VCPA claim for damages and attorneys fees under section 59.1-204 of the statute, which reads:

> Any person <u>who suffers loss as the result of a violation</u> of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater.

Va. Code § 59.1-204(A) (emphasis added). Although Alston did pay in excess of five percent for late fees, Crown Auto reimbursed her for the excess late fees, plus interest. Alston has not shown that she suffered a loss as the result of Crown Auto's violation of the VCPA, and therefore, she is not entitled to initiate an action for damages under this provision. Accordingly, we cannot conclude that the district court erred in granting summary judgment to Crown Auto on this claim.

Alston contends that despite the plain text of the VCPA's damages provision, under <u>Valley Acceptance Corp.</u> v. <u>Glasby</u>, 337 S.E.2d 291 (Va. 1985), she can still sue Crown Auto under the VCPA even if she suffered no loss. In <u>Glasby</u>, the bank was not licensed to issue the

6

type of loan it issued to the borrowers, imposed impermissible fees and charges, and unlawfully took an interest in the borrowers' real estate. Rather than simply awarding the borrowers damages, the court voided the entire contract. The court also awarded attorneys fees to the borrowers under section 59.1-204(B), which reads: "[I]n addition to any damages awarded, such person also may be awarded reasonable attorney's fees and court costs." Although Glasby is a case in which there were apparently no damages actually awarded, it is not clear that the borrowers suffered no loss. The question in Glasby was not whether a person who suffered no loss could sue for damages but whether a mere "technical" violation of the VCPA was a sufficient violation to support the award of attorneys fees. See id. at 297. In fact, the Virginia Supreme Court specifically avoided the question whether attorneys fees could be awarded when there are no actual damages awarded. See id. at 297 n.4. Because Glasby does not directly address the question whether someone who cannot show that they suffered loss can initiate a suit for damages under the VCPA, we cannot overlook the plain language of section 59.1-204, which clearly precludes Alston from filing suit.

CONCLUSION

For the reasons above, we conclude that the district court did not err when it granted Crown Auto's motion for summary judgment on Alston's TILA and state law claims.

AFFIRMED

7