

FILED

Aug 19 2019, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ronald C. Smith
Joel T. Nagle
Stoll Keenon Ogden PLLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Thomas W. Dinwiddie
Allison Wells Gritton
Wooden McLaughlin LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS
CURIAE THE INDIANA
BANKERS ASSOCIATION

Libby Yin Goodknight
Brett J. Ashton
Krieg DeVault LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Webb Ford, Inc.,

*Appellant-Petitioner,*

v.

Indiana Department of Financial
Institutions,

*Appellee-Respondent*

August 19, 2019

Court of Appeals Case No.
18A-PL-2675

Appeal from the
Marion Superior Court

The Honorable
Gary L. Miller, Judge

Trial Court Cause No.
49D03-1801-PL-2762

**Vaidik, Chief Judge.**

# Case Summary

[1] This case concerns two provisions of the Indiana Uniform Consumer Credit Code (IUCCC): one that requires sellers to disclose finance charges to credit customers, Indiana Code section 24-4.5-2-301, and one that allows sellers to impose certain charges on credit customers "in addition to" finance charges, Indiana Code section 24-4.5-2-202. For a period of time, Webb Ford, a car dealership in Highland, imposed a finance charge on credit customers but did not disclose it as such. The Indiana Department of Financial Institutions (DFI) initiated an enforcement action against Webb Ford, but it did not treat the charge as an undisclosed finance charge, i.e., a violation of the disclosure statute. Instead, DFI treated it as an "impermissible additional charge," i.e., a violation of the additional-charges statute. Webb Ford argues that a finance charge does not cease being a finance charge merely because it is not disclosed as such. We agree with Webb Ford. Accordingly, we remand this matter to DFI for further proceedings under the disclosure statute.

# Facts and Procedural History

[2] DFI regulates and supervises financial-services providers, including those who provide motor-vehicle financing. DFI administers the IUCCC, Indiana Code article 24-4.5. *See* Ind. Code § 24-4.5-1-201 (setting forth the purposes and policies of the IUCCC). Among other provisions, the IUCCC incorporates federal law regarding what sellers must disclose to buyers in consumer credit sales:

> The seller shall disclose to the buyer to whom credit is extended
> with respect to a consumer credit sale . . . the information
> required by the Consumer Credit Protection Act (15 U.S.C. 1601
> et seq.).

Ind. Code § 24-4.5-2-301(2) ("the disclosure statute").

The Truth in Lending Act (TILA) is contained in Title I of the Consumer Credit Protection Act. Congress passed TILA "to promote consumers' 'informed use of credit' by requiring 'meaningful disclosure of credit terms,' 15 U.S.C. § 1601(a), and granted the Board [of Governors of the Federal Reserve System] the authority to issue regulations to achieve TILA's purposes, § 1604(a)." *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011). Pursuant to this authority, the Board promulgated Regulation Z. *Id.* Regulation Z requires creditors to make disclosures "clearly and conspicuously in writing, in a form that the consumer can keep." 12 C.F.R. § 1026.17. Required written disclosures include: (1) the "amount financed"; (2) an "itemization of amount financed"; (3) the "finance charge"; and (4) the "annual percentage rate." 12 C.F.R. § 1026.18(b)-(e); *see also* 15 U.S.C. § 1638(a). "Finance charge" is defined as follows:

> The finance charge is the cost of consumer credit as a dollar
> amount. It includes any charge payable directly or indirectly by
> the consumer and imposed directly or indirectly by the creditor
> as an incident to or a condition of the extension of credit. It does
> not include any charge of a type payable in a comparable cash
> transaction.

12 C.F.R. § 1026.4(a); *see also* 15 U.S.C. § 1605(a).[1]  It is a violation of the IUCCC to "fail to make disclosures as required by" TILA and Regulation Z. Ind. Code § 24-4.5-6-107.5(g).

[4]     In 2007, the Indiana Bureau of Motor Vehicles (BMV) began a pilot program that allowed car dealerships to offer registration and titling services at the time of the sale, thereby saving customers a trip to the BMV.  Appellant's App. Vol. III p. 128.  The BMV allowed dealerships to charge customers a convenience fee for this service.[2]

[5]     Thereafter, Webb Ford began charging a $25.00 convenience fee to its credit customers for electronic titling with the BMV through a third party, Computerized Vehicle Registration (CVR).  Webb Ford charged the $25.00 convenience fee in addition to a $15.00 fee that went to the BMV.  Appellant's App. Vol. III p. 127.  Webb Ford required its credit customers to use electronic filing because the lenders to whom Webb Ford assigned the retail installment

---

[1] The IUCCC uses the term "credit service charge" instead of "finance charge."  The parties agree that these terms are synonymous.  *See* Ind. Code § 24-4.5-2-109 (defining "credit service charge" in part as "all charges payable directly or indirectly by the buyer and imposed directly or indirectly by the seller as an incident to the extension of credit").  In line with the parties, we use the term "finance charge."

[2] Effective July 1, 2016, the General Assembly enacted Indiana Code section 9-14.1-3-3, which allows car dealerships to collect a convenience fee for the titles and registrations that they process and requires dealerships to give notice of the fee to its customers, including that the customer can go to the BMV and avoid the fee altogether.  According to an August 30, 2016 memo from the BMV, the maximum amount of the fee is $15.00 for titles and $21.35 for registrations.  Memo from Ind. Bureau of Motor Vehicles to Ind. Secretary of State Auto Dealer Servs. Div., http://in.gov/sos/dealer/files/convenience%20fee%20memo.pdf (last visited Aug. 5, 2019).

contracts required the dealership to show the assignee's name on the title before they would accept the contract. *Id.* at 119, 127. Webb Ford, however, did not require its cash customers to use this service but rather gave them the option. Approximately 40% of Webb Ford's cash customers opted to use electronic filing and pay the $25.00 convenience fee. The remaining 60% went to the BMV themselves, thereby avoiding the fee altogether.

[6] For several days in December 2015 and January 2016, DFI conducted a routine examination of Webb Ford's records for compliance with the IUCCC, including TILA and Regulation Z. In February 2016, DFI issued a Consumer Credit Examination Report. Appellant's App. Vol. II pp. 29-36. In this examination report, DFI identified "[o]ne violation" from a transaction on July 27, 2015, where Webb Ford did not properly disclose the $25.00 convenience fee on the retail installment contract. *Id.* at 32. According to DFI, Webb Ford should have disclosed the $25.00 convenience fee in the "Finance Charge" box, as the fee was only mandatory for credit customers and therefore was "a condition of the extension of credit." *Id.* Although Webb Ford did not provide the retail installment contract from that July 27, 2015 transaction, it did provide another one from the same time period. According to this retail installment contract, Webb Ford disclosed the $25.00 convenience fee (referred to as a

"Filing Fee" on the contract) in the "Itemization of Amount Financed" and "Amount Financed" boxes, not in the "Finance Charge" box:[3]

[3] As for Webb Ford's alternate argument on appeal that it properly disclosed the $25.00 convenience fee in the "Amount Financed" box because of a 2007 letter that DFI sent to the BMV, we disagree with Webb Ford's characterization of this letter. DFI's 2007 letter stated that dealerships could disclose the convenience fee in the "Amount Financed" box but only if they "assessed [the fee] to cash and credit customers alike in the same amount." Appellant's App. Vol. III p. 128. Webb Ford, however, only made the fee mandatory for its credit customers.

Appellant's Supp. App. Vol. II p. 2.[4]  As a result of finding this violation, DFI ordered Webb Ford to conduct a "file search" to "identify and refund all instances where [the $25.00 convenience fee was] assessed on consumer credit sales since December 30, 2013."[5]  Appellant's App. Vol. II p. 32.

[7]  Thereafter, Webb Ford and DFI tried to resolve the matter informally.  Webb Ford told DFI that by April 2016, it had discontinued its practice of "including the convenience fee in the Amount Financed" box and had started charging "both credit and cash customers alike the convenience fee charge, which removed it from the disclosure requirements of TILA."  *Id.* at 41.

[8]  When Webb Ford and DFI could not resolve the matter informally, DFI issued a Notice of Charges, Order to Cease and Desist, and Make Restitution in November 2016.  DFI did not charge Webb Ford with violating the disclosure statute for not disclosing the $25.00 convenience fee in the "Finance Charge" box, as one might have expected it to do.  Rather, DFI charged Webb Ford with violating a different part of the IUCCC, Indiana Code section 24-4.5-2-202 ("the additional-charges statute), for assessing "impermissible additional

---

[4] For this particular contract, Ford Motor Credit was offering a sales incentive of 0% financing for 72 months.  Appellant's Tender of Supp. App., No. 18A-PL-2675 (May 20, 2019).

[5]  In the trial court, Webb Ford claimed that refunding the $25.00 convenience fee to all credit customers over a two-year period could amount to "hundreds of thousands of dollars."  Tr. p. 6.  Webb Ford noted that other dealerships were facing "similar enforcement orders" from DFI and were "waiting in the wings . . . to see how this case plays out."  *Id.*  At oral argument, Webb Ford again noted that there is "uncertainty and confusion within the industry" and asked us to "give clarity."  *See* Oral Arg. Video at 10:50, 13:01.

charges" in the form of the $25.00 convenience fee. *Id.* at 56, 57. The additional-charges statute provides, in pertinent part:

> In addition to the [finance] charge permitted by this chapter, a seller may contract for and receive any of the following additional charges in connection with a consumer credit sale:

> (a) Official fees and taxes.

> (b) Charges for insurance as described in subsection (2).

> (c) Notwithstanding provisions of the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.) concerning disclosure, charges for other benefits, including insurance, conferred on the consumer, if the benefits are of value to the consumer and if the charges are reasonable in relation to the benefits, and are excluded as permissible additional charges from the credit service charge. With respect to any additional charge not specifically provided for in this section, to be a permitted charge under this subsection the seller must submit a written explanation of the charge to the department indicating how the charge would be assessed and the value or benefit to the consumer. Supporting documents may be required by the department. The department shall determine whether the charge would be of benefit to the consumer and is reasonable in relation to the benefits.

> (d) A charge not to exceed twenty-five dollars ($25) for each returned payment by a bank or other depository institution of a dishonored check, electronic funds transfer, negotiable order of withdrawal, or share draft issued by the consumer.

> (e) Annual participation fees assessed in connection with a revolving charge account. . . .
>
> (f) A charge not to exceed twenty-five dollars ($25) for a skip-a-payment service . . . .
>
> (g) A charge not to exceed ten dollars ($10) for an optional expedited payment service . . . .
>
> (h) A charge for a GAP agreement, subject to subsection (4).

Ind. Code § 24-4.5-2-202(1). According to DFI, because Webb Ford did not "treat the $25.00 [convenience fee] as a part of the" finance charge, it "attempt[ed] to treat the fee as an additional charge," but such a fee was not authorized pursuant to the additional-charges statute. Appellant's App. Vol. II p. 32. Accordingly, DFI ordered Webb Ford to (1) "Cease and Desist charging a mandatory $25 electronic vehicle registration fee[] to credit customers only when such fees are not also charged to cash customers" and (2) "search its files from December 30, 2013 to the present to identify and to refund all impermissible additional charges that were assessed to consumer credit buyers but not to cash buyers." *Id.* at 58.

[9] Webb Ford sought review of DFI's order, and DFI appointed an administrative law judge (ALJ). The ALJ issued her findings and conclusions in November 2017. They provide, in part:

17. The question is, then, what is the convenience charge? There is no question that the fee was the same amount for both credit and cash customers. However, the fee was optional for cash customers and mandatory for credit customers, therefore, leading to the conclusion that the fee was incidental to the extension of credit and thus, a finance charge.

\* \* \* \* \*

20. . . . In this case, the fee was mandatory for credit customers, but optional for cash customers. Webb did not disclose the fee as a finance charge, however. Because it was required for credit customers, it was incidental to the extension of credit and was not part of the cash price. **As it was not disclosed as a finance charge, then it must be an additional charge.** Under I.C. § 24-4.5-2-202, a seller may contract for certain specified additional charges. If a charge is not listed, then the seller may ask DFI to approve any additional charge not specifically provided for in this section. In this case, there is no question that the convenience fee is not one of the specified charges nor was it an additional charge which DFI had approved.

*Id.* at 26-27 (emphasis added). The Members of DFI later adopted the ALJ's order as their final order. *Id.* at 19. Webb Ford then filed a petition for judicial review. Following a hearing, the trial court affirmed DFI's final order, concluding that "Webb Ford has failed to meet its burden of showing it was prejudiced by an agency decision that was arbitrary, capricious or otherwise contrary to law." *Id.* at 17.

Webb Ford appealed the trial court's order. The Indiana Bankers Association appears as amicus curiae in support of DFI. We held oral argument in this case on July 22, 2019.

## Discussion and Decision

Webb Ford challenges the trial court's order upholding DFI's administrative decision. Under Indiana's Administrative Orders and Procedures Act, we may set aside an agency's action if it is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). Webb Ford bears the burden of showing us that DFI's action is invalid. *Id.* at (a).

Our "review of agency action is intentionally limited, as we recognize an agency has expertise in its field and the public relies on its authority to govern in that area." *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 619 (Ind. 2019) (quotations omitted)). We do not try the facts de novo but rather "defer to the agency's findings if they are supported by substantial evidence." *Id.* (quotation omitted). "On the other hand, an agency's conclusions of law are ordinarily reviewed de novo." *Id.* (quotation omitted). While "[w]e are not bound by the [agency's] conclusions of law, . . . '[a]n interpretation of a statute

by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.'" *Id.* (quotations and citation omitted). "In fact, if the agency's interpretation is reasonable, we stop our analysis and need not move forward with any other proposed interpretation." *Id.* (quotation omitted).

[13] Webb Ford concedes that the $25.00 convenience fee was a finance charge because it was mandatory for its credit customers but not its cash customers.[6] *See* Oral Arg. Video at 7:31-7:45, 9:18-9:21. Indeed, cases from other courts across the country hold that a charge that is mandatory for credit customers but not cash customers is incident to the extension of credit and therefore must be disclosed as a "finance charge." *See, e.g.*, *Alston v. Crown Auto, Inc.*, 224 F.3d 332, 334 (4th Cir. 2000) (holding that because the car dealership's general practice was to charge a fee to both cash and credit customers, the fee was not a "finance charge" and therefore there was no TILA violation in failing to

---

[6] As noted above, by April 2016, Webb Ford had changed its practice and was charging the convenience fee to both its cash and credit customers. In December 2018, after Webb Ford filed the Notice of Appeal in this case, DFI issued Advisory Letter 2018-02. According to this letter, car dealerships must now "present the convenience fee to the customer as optional." Ind. Dep't of Fin. Insts., General Information, Policies and Guidance, Advisory Letter 2018-02, https://www.in.gov/dfi/files/REVISED%20AL%20on%20convenience%20fee%20v2%20Dec%202018%20 FINAL.pdf (last visited Aug. 7, 2018). As DFI explained in the letter:

> When a fee is assessed uniformly to cash and credit customers alike, (i.e. the fee is either required of all cash and credit customers, or is optional for all cash and credit customers) then it is not required to be classified as a finance charge. This means the fee is permissible as part of the cash price. In essence, the service and fee must be presented to all consumers in the same manner.

*Id.* (footnotes omitted).

disclose it as such); *Compton v. Altavista Motors, Inc.*, 121 F. Supp. 2d 932, 937 (W.D. Va. 2000) (holding that car dealership violated TILA by not disclosing a fee that was only charged to credit customers as a "finance charge"); *White v. Diamond Motors, Inc.*, 962 F. Supp. 867, 871 (M.D. La. 1997) (holding that when a fee is optional for both cash and credit customers, the fee is not incident to the extension of credit and therefore not a "finance charge"); *see also Hook v. Baker*, 352 F. Supp. 2d 839, 844 (S.D. Ohio 2004).

[14] Despite its concession that the $25.00 convenience fee was a finance charge and therefore should have been disclosed in the "Finance Charge" box on the retail installment contract, Webb Ford highlights that DFI did not charge it with violating the disclosure statute, Section 24-4.5-2-301(2); rather, DFI charged it with violating the additional-charges statute, Section 24-4.5-2-202. Webb Ford claims that DFI "acted arbitrarily and capriciously or otherwise not in accordance with the law" in doing so because "if [a finance charge is] disclosed improperly, it's still a finance charge" governed by the disclosure statute. Appellant's Br. p. 16; Oral Arg. Video at 18:33-18:38; *see also* Appellant's Br. p. 22 ("A finance charge is a finance charge that TILA governs regardless of whether it was improperly disclosed in the amount-financed box or properly in the finance charge box.").

[15] DFI has offered no authority or explanation for why it chose to treat the $25.00 convenience fee—which everyone agrees is a finance charge that should have been disclosed in the "Finance Charge" box—as an "impermissible additional charge," other than this is how it has done things for forty years. *See*

Appellant's App. Vol. II p. 14. But as counsel for Webb Ford said at oral argument, this just "doesn't make sense." Oral Arg. Video 18:59.

[16] We agree with Webb Ford. For starters, the IUCCC's definition of finance charge "does not include charges as a result of . . . additional charges (IC 24-4.5-2-202)." I.C. § 24-4.5-2-109. Also, the additional-charges statute provides that "additional charges" are "[i]n addition to" finance charges. I.C. § 24-4.5-2-202(1). Therefore, a finance charge—again, which everyone agrees is at issue here—can't also be an additional charge. Moreover, although in its brief DFI defended its decision to charge Webb Ford with violating the additional-charges statute, it changed its tune at oral argument, admitting that it could have instead charged Webb Ford with violating the disclosure statute because the remedies under both statutes are the same—a refund of the $25.00 convenience fee. Oral Arg. Video at 38:41. In other words, DFI's counsel said that charging Webb Ford with violating the additional-charges statute was "the same thing" as charging it with violating the disclosure statute. *Id.* at 40:47. Because there is no authority for DFI's practice, we hold that a finance charge does not cease being a finance charge just because it is not disclosed as such.

[17] We acknowledge that this clarification might not make a practical difference in this case. At oral argument, DFI seemed to think that it doesn't matter whether it charged Webb Ford with violating the disclosure statute or the additional-charges statute, because the remedies under both are the same. But Webb Ford says that it does matter, because if this case is treated as a disclosure violation only, then it is entitled to raise certain defenses under TILA, such as tolerances,

bona fide error, and a shorter statute of limitation. Based on the record before us, we don't know who is right; these issues haven't been developed. *See* Oral Arg. Video 5:07-5:20 (Webb Ford's counsel noting that these issues haven't been explored). All we hold today is that a finance charge doesn't become an "impermissible additional charge" when it's not disclosed in the "Finance Charge" box.

Accordingly, we (1) affirm DFI's finding that the $25.00 convenience fee was a finance charge and that Webb Ford failed to disclose it as such; (2) reverse DFI's finding that because the fee was not disclosed in the "Finance Charge" box, "it must be an additional charge," Appellant's App. Vol. II p. 27; and (3) remand this matter to DFI for further proceedings under the disclosure statute, allowing Webb Ford to raise any applicable defenses.[7]

Affirmed in part, reversed in part, and remanded for further proceedings.

Kirsch, J., and Altice, J., concur.

---

[7] Webb Ford also argues on appeal that its due-process rights were violated. Given our disposition of this matter in Webb Ford's favor, we need not address this issue.